A. TEICHERT & SON, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31815. Promulgated July 23, 1952.

A. I. Diepenbrock, Esq., for the petitioner.
T. M. Mather, Esq., for the respondent.

OPINION.

ARUNDELL, *Judge:* The respondent determined a deficiency in the petitioner's income tax for the calendar year 1942 in the amount of $13,-331.09, and an overassessment of excess profits tax in the amount of $2,715.27 for that year. In making his determination the respondent took into account an unused excess profits credit for the calendar year 1944 in the amount of $35,661.50. The petitioner alleges that such carry-back of a credit was error on the part of the respondent.

The facts have been stipulated, and are found as stipulated.

The petitioner is a California corporation, and filed its income and excess profits tax returns for the calendar years 1942 and 1944 with the collector for the first district of California. For the year 1944 the petitioner had an unused excess profits credit in the amount of $35,661.50 which was available as a carry-back to the year 1942. The amount of such carry-back was computed without regard to section 722 of the Code. The respondent's determination for the year 1942, in which the carry-back for 1944 was taken into account, was made under the 80 per cent limitation contained in Code section 710 (a) (1) (B) and in condensed form was as follows:

| | |
|---|---|
| Surtax net income | $1,020,919.36 |
| 80 per cent thereof | 816,735.49 |
| Less Chapter I income tax | 62,293.79 |
| Balance—excess profits tax | $754,441.70 |

If the unused excess profits carry-back from 1944 had not been taken into account, the Chapter I tax (normal tax and surtax) would have been less, and excess profits tax would have been greater than the amounts determined, and would have been:

| | |
|---|---|
| 80 per cent of surtax net income | $816, 735. 49 |
| Less Chapter I income tax | 48, 029. 19 |
| Balance—excess profits tax | $768, 706. 30 |

The petitioner contends that the latter computation is the proper one.

The difference between the parties lies in their respective interpretations of the provisions of Code section 710 (b) which defines the term "adjusted excess profits net income." More particularly, they differ as to whether paragraph (3) of that section, which provides for the deduction of unused excess profits credits, is permissive only or is mandatory.

The issue arises because of the interplay of section 710 (a) (1) (B) which limits the aggregate of corporate income and excess profits taxes to a maximum of 80 per cent of surtax net income, and of section 780 which provides for a 10 per cent postwar refund of excess profits taxes. Because of the 80 per cent limitation, the petitioner's aggregate tax for 1942 will be $816,735.49, and this aggregate is not affected by the respondent's determination of a deficiency in income tax. The determination merely has the effect of making a different distribution of the total between income tax and excess profits tax than is made by the petitioner's computation. As a consequence of his determination that the carry-back provision requires a reduction of "adjusted excess profits net income" the respondent has computed the excess profits tax liability to be $754,441.70 rather than $768,706.30 computed by the petitioner without the use of the carry-back deduction.

Although the total tax for the taxable year is not affected, the issue is a practical one because of the 10 per cent postwar refund provision contained in section 780. The 10 per cent refund is computed on the excess profits tax without regard to the income tax. Hence, it is to the petitioner's advantage that as much as possible of the total taxes due be allocated to the excess profits tax rather than to the income tax. The petitioner, therefore, seeks to disregard the unused 1944 excess profits credit which was available as a carry-back for the taxable year 1942.

Code section 710 (a) provides for the imposition of an excess profits tax "upon the adjusted excess profits net income, as defined in subsection (b)   *   *   *." Subsection (b), as far as presently material reads:

(b) DEFINITION OF ADJUSTED EXCESS PROFITS NET INCOME.—As used in this section, the term "adjusted excess profits net income" in the case of any taxable

year means the excess profits net income (as defined in section 711) minus the sum of:

    (1) SPECIFIC EXEMPTION.— * * *

    (2) EXCESS PROFITS CREDIT.— * * *

    (3) UNUSED EXCESS PROFITS CREDIT.—The amount of the unused excess profits credit adjustment for the taxable year, computed in accordance with subsection (c).

In support of its contention that the carry-back provision is merely permissive and need not be used, the petitioner argues that section 710 (b) (3) is a relief provision and should be interpreted so as to grant the relief intended. There is implicit in this argument a contention that the language of the statute contains an ambiguity that must be resolved by interpretation.

We find no ambiguity or obscurity in the provisions of section 710 (b) (3), or in related sections material to this proceeding, which would justify resorting to extrinsic sources such as legislative history to determine their meaning. It is a basic rule of statutory construction that where the language is plain and admits of no more than one meaning, there is no need for extrinsic interpretative aids. "* * * the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." *Caminetti* v. *United States*, 242 U. S. 470, 490.

The words immediately before us are contained in the above-quoted definition of adjusted excess profits net income. They are that adjusted net income *"means* the excess profits net income * * * *minus* * * * the amount of the unused excess profits credit adjustment * * *."* (Emphasis added.) The definition is cast in simple, direct language; it contains no complexities or qualifications that might give rise to a double meaning or create doubt as to whether a taxpayer has the option of disregarding the credit if he chooses to do so. It clearly states that the unused excess profits credit adjustment is to be subtracted from excess profits net income in determining adjusted excess profits net income. Had Congress intended to give any election as to whether or not the credit should be deducted, apt wording would have been used. We think that the respondent was correct in applying the 1944 unused credit in determining the 1942 adjusted excess profits net income.

In following the plain meaning of the statute and taking the 1944 credit into account, the respondent is not, as the petitioner suggests, obstructing the attainment of the relief sought in the enactment of subsection (b) (3). The diminution of excess profits taxes was the objective of this subsection and such is the result of the respondent's determination. Paradoxically the interpretation sought by the petitioner contravenes that objective in order that the aggregate income and excess profits taxes might be lower, after taking into account the 80 per cent limitation contained in section 710 (a) (1) (A) and (B)

and the 10 per cent postwar refund contained in section 780. There is nothing in the wording of section 710 (b) (3) to indicate that in the enactment of this narrow provision the legislature intended to confer such a broad scope of relief. Moreover, section 710 (a) (1) indicates that the basic tax is the Chapter I tax and that it is not subject to diminution. That section, in the 80 per cent limitation provision, provides for the imposition of an excess profits tax "which when added to the tax imposed" by Chapter I equals 80 per cent of surtax net income. Thus, if there is to be any adjustment of taxes to keep them within the 80 per cent provision, the adjustment is to be in the amount of excess profits tax to be "added to" the income tax rather than in the amount of income tax.

The petitioner cites as authority for its position *Colson Corporation*, 5 T. C. 1035, followed in *Carter Mullaly, et al., Trustees*, 5 T. C. 1376; *Fain Drilling Co.*, 8 T. C. 1174. We held in *Colson Corporation*, *supra*, that the respondent may not invoke the provisions of section 711 (b) (1) (J) of the Code, and disallow a bad debt deduction as an abnormality in computing excess profits net income for the basic period year 1936 where the taxpayer has computed its excess profits credit under section 713 (f) and where such action will result in a decrease in the taxpayer's excess profits credit. We pointed out that the construction we adopted was necessary in order that the relief provision being interpreted might give the relief it was intended to provide. We also pointed out that there was another provision (section 711 (b) (1) (K)) which specifically limited the application of the provision being interpreted. Under these circumstances, *Colson Corporation*, *supra*, and the cases following it are of no aid to the petitioner in the instant case.

For the reasons set forth above, we are of the view that the respondent correctly carried back to the taxable year 1942 the unused excess profits credit adjustment for the taxable year 1944.

*Decision will be entered for the respondent.*