BARRY-WEHMILLER MACHINERY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32397.   Promulgated June 29, 1953.

*I. Herman Sher, Esq.*, for the petitioner.
*David Karsted, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge:* The respondent determined deficiencies in petitioner's income tax and overassessments of its excess profits tax as follows:

| Year ended July 31 | Deficiency in income tax | Overassessment of excess profits tax |
| --- | --- | --- |
| 1942 | $7,381.76 | $22,334.47 |
| 1943 | 14,182.40 | 28,719.35 |
| 1944 | 26,702.04 | 62,023.39 |
| 1945 | 902.19 | 1,928.44 |

The only question remaining for determination is whether in computing the amount of the refund of excess profits tax for the fiscal year ended July 31, 1943, petitioner is entitled to a carry-back of its unused excess profits credit for the fiscal year ended July 31, 1945.

Preliminary questions are (1) whether the carry-back in question must have been claimed by petitioner in its claim for refund or whether the carry-back is automatically required by statute, and (2), if a claim

for carry-back is required, whether petitioner's claim therefore was timely filed.

The petitioner filed proper claims for relief under section 722 of the Internal Revenue Code for the taxable years noted above and the respondent has allowed in part the amounts claimed by petitioner under section 722 as its constructive average base period net income. The petitioner now agrees with the respondent's determination in that respect, and we no longer have any issues relating to relief under section 722.

The facts have been stipulated and are found as stipulated.

Petitioner is a Missouri corporation with its principal office in St. Louis, Missouri. Its business is the manufacture and sale of pasteurizing machinery. It keeps its books of account and files its Federal tax returns on an accrual basis for fiscal years ended July 31. Its returns for the years herein were filed with the collector of internal revenue for the first district of Missouri.

For the taxable years 1942, 1943, 1944, and 1945, the petitioner filed excess profits tax returns and applications for relief under section 722 and for refunds of excess profits tax which would result from allowance of the relief claimed under section 722, as follows:

| Year ended July 31 | Date return filed | Date claim filed |
|---|---|---|
| 1942 | Dec. 15, 1942 | Oct. 9, 1945 |
| 1943 | Oct. 13, 1943 | Oct. 11, 1946 |
| 1944 | Sept. 27, 1944 | Aug. 18, 1947 |
| 1945 | Oct. 12, 1945 | Feb. 3, 1948 |

On its excess profits tax return for the fiscal year ended July 31, 1943, the petitioner reported excess profits tax in the amount of $51,541.09. On June 14, 1944, a deficiency in excess profits tax for the taxable year ended July 31, 1943, in the amount of $20,709.57 was assessed, making a total assessment of $72,251.49. The excess profits tax so assessed was paid as follows:

| Date | Amount |
|---|---|
| Oct. 13, 1943 | $12,885.48 |
| Jan. 12, 1944 | 12,885.48 |
| Apr. 21, 1944 | 16,004.10 |
| July 8, 1944 | 9,766.86 |
| Total | $51,541.92 |
| July 8, 1944 | 20,709.57 |
| | $72,251.49 |

On January 16, 1945, $31,023 of the above assessment was refunded or credited under the provisions of section 3806 (b) of the Internal Revenue Code.

Attached to its application for relief under section 722 and for refund of excess profits tax paid for 1943 was a statement which in part was as follows:

### Excess Profits Tax Under Section 722

| | |
|---|---:|
| Excess profits net income per return | $154,681.02 |
| Specific exemption | (5,000.00) |
| Excess profits credit (95 per cent of constructive average base period net income) | (150,825.83) |
| Excess profits credit carry-over: | |
|     Excess profits net income for year ended July 31, 1942 _____ $273,672.92 | |
|     Excess profits credit for year ended July 31, 1942 _____ 150,825.83 | |
|     Adjusted excess profits net income for year ended July 31, 1942 _____ 122,847.09 | |
|     Unused excess profits credit carry-over from year ended July 31, 1941 (see application for relief under Section 722 for year ended July 31, 1942) _____ 144,362.49 | |
| Balance of unused excess profits credit | (21,515.40) |
| Adjusted excess profits net income | None |
| Excess profits tax | None |

In the above 1943 application petitioner incorporated by reference its application for relief under section 722 for the year ended July 31, 1942.

Attached to petitioner's application for relief under section 722 for the taxable year ended July 31, 1944, filed August 18, 1947, as shown above, was a statement which in part was as follows:

### Excess Profits Tax Under Section 722

| | |
|---|---:|
| Excess profits net income per return | $207,477.62 |
| Specific exemption | (5,000.00) |
| Excess profits credit (95 per cent of constructive average base period net income) | (133,648.52) |
| Excess profits credit adjustment (See Exhibit 1) | (77,817.53) |
| Adjusted excess profits net income | None |
| Excess profits tax | None |

Exhibit 1, referred to above, is as follows:

*Unused Excess Profits Credit Adjustment for the Year Ended July 31, 1944*

| | 1942 | Year ended July 31 1943 | 1945 | 1946 |
|---|---|---|---|---|
| Excess profits net income___ | $273,672.92 | $154,681.02 | $98,965.55 | $90,513.96 |
| Constructive excess profits credit_____ | 133,648.52 | 133,648.52 | 133,648.52 | 133,648.52 |
| Unused excess profits credit_____ | _____ | | $34,682.97 | $43,134.56 |

Unused excess profits credit carry-back:

| | |
|---|---|
| From year ended July 31, 1945_____ | $34,682.97 |
| From year ended July 31, 1946_____ | 43,134.56 |
| | $77,817.53 |

In the above 1944 application, petitioner incorporated by reference its application for relief under section 722 for the year ended July 31, 1942, and a memorandum filed February 3, 1947, which pertained to its 1942 and 1943 applications for section 722 relief.

In addition to the applications for relief under section 722, Forms 991, for each of the taxable years ended July 31, 1942, to July 31, 1945, inclusive, as set out above, petitioner filed supplemental memoranda, as follows:

| Caption of memorandum | Date |
|---|---|
| 1. In the matter of the application for relief under section 722, I. R. C., for the taxable years ending July 31, 1942 and 1943_____ | February 3, 1947 |
| 2. In the matter of the application for relief under section 722, I. R. C., for the taxable years ending July 31, 1942 and 1943_____ | August 28, 1947 |
| 3. In the matter of the application for relief under section 722, I. R. C., for the taxable years ended July 31, 1942 and 1943_____ | December 19, 1947 |
| 4. In the matter of the applications for relief under section 722, I. R. C.*_____ | July 27, 1948 |
| 5. In the matter of the applications for relief under section 722, I. R. C., for the taxable years ended July 31, 1942 to 1945, inclusive___ | August 12, 1949 |

*This memorandum related to applications for relief under section 722 for the taxable years ended July 31, 1942 to 1945, inclusive.

The memoranda dealt with the merits and substance of the applications for relief under section 722 for the respective years, and did not make any claims with respect to treatment of unused excess profits credits, beyond such inferences as might be drawn from mere reference to the individual applications for relief themselves. In the memorandum of August 28, 1947, relating to applications for relief for the years ended July 31, 1942 and 1943, reference was made to the application for relief for the year ended July 31, 1944, as follows:

On or about February 3, 1947, Barry-Wehmiller Machinery Company * * * filed a memorandum in support of its claims for relief * * * for the taxable years ending July 31, 1942 and 1943. On August 18, 1947, the taxpayer filed a claim for relief under section 722 for the taxable year ended July 31, 1944. Said

memorandum and application, together with the documents referred to in said memorandum, are hereby incorporated herein as a part hereof by reference and made a part hereof. This supplemental memorandum is submitted in support of the taxpayer's application for relief.

In its memorandum dated July 27, 1948, petitioner referred expressly to its memorandum of August 28, 1947.

On November 5, 1947, in answer to petitioner's protest against the revenue agent's report covering the examination of petitioner's applications for relief under section 722 for the years ended July 31, 1942 and 1943, the revenue agent in charge advised petitioner that its application, Form 991, for the taxable year ended July 31, 1944, had recently been received; that the only data submitted with the application was a reference to information submitted for previous years; that since that information had been considered, the recommendation expressed in the revenue agent's report was also applicable to petitioner's 1944 application; and "Accordingly it is suggested that when making your protest you also include taxable year 1944, so that all years may be considered simultaneously and be associated from this time on."

Petitioner is entitled to compute its excess profits tax liability for the taxable years under the provisions of section 722.

Under date of May 22, 1950, respondent duly determined the amounts of constructive average base period net income of petitioner under section 722, as follows:

| Year ended July 31 | Constructive average base period net income |
|---|---|
| 1941 (For carry-over purposes) | None |
| 1942 | $127,900 |
| 1943 | 127,900 |
| 1944 | 127,900 |
| 1945 | 127,900 |
| 1946 (For carry-back purposes) | 127,900 |

Petitioner agreed to the determination and signed the appropriate form (EPC–1) with respect thereto on May 3, 1950. The determination resulted in an excess-profits credit of $121,505.

In his determination of the petitioner's constructive average base period net income, the petitioner's applications for relief under section 722 for the taxable years 1942, 1943, 1944, and 1945 were considered together by the respondent.

On July 7, 1950, petitioner filed an amended application for relief under section 722 for the taxable year ended July 31, 1943, in which the following statement appears:

This amended application is hereby filed for the purpose of specifically claiming the carry-back of unused excess profits credit from the year ended July 31, 1945 to the year ended July 31, 1943 in the amount of at least $23,200.50 computed under section 722 on the basis of the CABPNI granted by the Excess Profits Tax Council, as follows:

Excess profits net income for the year ended July 31, 1945
per RAR dated June 17, 1946_____ $98, 304. 50
Constructive excess profits credit_____ 121, 505. 00

Carry-back to year ended July 31, 1943_____ $23, 200. 50

Prior to the filing on July 7, 1950, of the amended application for relief under section 722 for the taxable year ended July 31, 1943, the petitioner made no claim for a carry-back to 1943 of any unused excess profits credit from the taxable year ended July 31, 1945.

Petitioner's correct excess profits net income for the taxable years ended July 31, 1942, to July 31, 1945, inclusive, is as follows:

1942_____ $264, 255. 96
1943_____ 141, 948. 39
1944_____ 213, 869. 03
1945_____ 98, 304. 50

A portion of the excess profits credit for each of the years ended July 31, 1945 and 1946, computed on the basis of the above constructive average base period net income as determined by the respondent and agreed to by petitioner, was left unused in each such year. In his determination of overpayment of excess profits tax herein, the respondent allowed a carry-back to the year 1944 of the unused excess profits credits for 1945 and 1946. He allowed no carry-back in his determination for 1943, on the ground that no timely claim therefor had been filed.

As a prerequisite to the allowance of a refund resulting from the application of section 722, a taxpayer must have complied with the requirements of subsection (d)[1] thereof, and section 35.722–5, as amended, of Regulations 112, the pertinent parts of which are set out in the margin.[2] *Lockhart Creamery*, 17 T. C. 1123; *Packer Publishing*

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(d) APPLICATION FOR RELIEF UNDER THIS SECTION.—* * * The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. If a constructive average base period net income has been determined under the provisions of this section for any taxable year, the Commissioner may, by regulations approved by the Secretary, prescribe the extent to which the limitations prescribed by this subsection may be waived for the purpose of determining the tax under this subchapter for a subsequent taxable year.

[2] Regs. 112, sec. 35.722–5 (a), as amended:

If an application on Form 991 (revised January, 1943) for the benefits of section 722 has been filed with respect to any taxable year, or if the filing of such application is unnecessary under (d) of this section, and if the excess profits credit based upon a constructive average base period net income determined for such taxable year produces an unused excess profits credit for such year, to obtain the benefits of such unused excess profits credit as an unused excess profits credit carry-over or carry-back the taxpayer should file an application upon Form 991 (revised January, 1943), or an amendment to such application if already filed, for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied.

Such application or amendment should be filed within the period of time prescribed by section 322 for the filing of a claim for credit or refund for the taxable year to which the

*Co.*, 17 T. C. 882. See also *Blum Folding Paper Box Co.*, 4 T. C. 795; *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 293.

In section 322 of the Internal Revenue Code,[3] it is provided generally that no refund or credit of tax paid shall be allowed unless the claim for credit or refund is filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later. With respect to a claim based on the carry-back of an unused excess profits credit, however, the refund claim is timely if it is filed within the period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the unused excess profits credit. Here the fiscal year ended July 31, 1945, was the taxable year of the unused excess profits credit and the fifteenth day of the thirty-ninth month following the end of that taxable year was October 15, 1948, and a claim for the benefit of such carry-back filed after that date was not timely, and may not be allowed.

It is the contention of the petitioner that not only has it complied with the requirements of the Code and the regulations as to the filing of its claim for refund, but that, under the statute, it is mandatory that the unused excess profits credit carry-back from 1945 to 1943 be taken into account in computing its excess profits tax for 1943 under section 722.

The facts are, that when the petitioner filed its claim for relief and refund under section 722 for the fiscal year 1943, on October 11, 1946, no reference was made to a carry-back credit from 1945. We start, therefore, with neither a formal nor an informal claim for refund

carry-over or carry-back is to be applied. In addition to all other information required, such application or amendment should incorporate by reference the data and information submitted in support of the application filed for the taxable year for which the unused excess profits credit arose, and in addition should claim the benefit of the unused excess profits credit carry-over or carry-back.

See T. D. 5393, 1944 C. B. 415, 422.

[3] SEC.322. REFUNDS AND CREDITS.

\*     \*     \*     \*     \*     \*     \*

(b) LIMITATION ON ALLOWANCE.—

(1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. \* \* \*

\*     \*     \*     \*     \*     \*     \*

(6) SPECIAL PERIOD OF LIMITATION WITH RESPECT TO NET OPERATING LOSS CARRY-BACKS AND UNUSED EXCESS PROFITS CREDIT CARRY-BACKS.—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back, or the period prescribed in paragraph (3) in respect of such taxable year, whichever expires later. In the case of such a claim, the amount of the credit or refund may exceed the portion of the tax paid within the period provided in paragraph (2) or (3), whichever is applicable, to the extent of the amount of the overpayment attributable to such carry-back.

resulting from an unused excess profits credit carry-back, and unless there was such claim on or before October 15, 1948, the time limit prescribed by section 322 (b) (6), *supra*, for claiming a refund based on such a carry-back from the fiscal year 1945, the amended claim, so-called, filed on July 7, 1950, was a new claim and having been filed out of time, the respondent was without power to entertain and act upon it. *United States* v. *Andrews*, 302 U. S. 517; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528.

While admitting that the amended application filed on July 7, 1950, was filed after the expiration of the statutory period for filing an original claim for refund based on the carry-back of the 1945 unused excess profits credit, it is the contention of the petitioner that a claim for such carry-back was in substance within the claim for section 722 relief and refund thereunder, which claim was made within the statutory period. In support of that contention, petitioner points to its application for section 722 relief for its fiscal year 1944, in which application it did refer to a carry-back of unused excess profits credit from 1945 to 1944; to its incorporation, by reference, of its applications for relief for the other years herein and its various memoranda filed with respect thereto; to respondent's consolidation and consideration of all four of its applications for section 722 relief for the years 1942 to 1945, inclusive; to respondent's allowance of the carry-back credit from 1945 to 1944; and to respondent's computation of the 1944 overpayment of excess profits tax under section 722, in which he took into account the credit that would have been used in 1943.

In its application for relief for 1944 petitioner, in its computation, did take into account the carry-back credit from 1945 and respondent allowed the refund resulting therefrom, which was proper. In *Packer Publishing Co.*, *supra*, this Court held that the computation by a taxpayer of its claim under section 722 for the year 1944 included an unused excess profits tax credit from the year 1942 and that that was sufficient notice to respondent of the taxpayer's position. But that is not the case with this petitioner's claim for 1943. A claim for a carry-back to 1944 is entirely independent and separate from a claim for a carry-back to 1943. The only claim for a carry-back to 1943 was made after the running of the statute of limitations for the presentation of such a claim and, therefore, could not be considered by the respondent or this Court. See *Young* v. *United States*, 103 F. Supp. 12, affd. (C. A. 8), 203 F. 2d 686; *Byron Weston Co.* v. *United States* (Ct. Cl.), 87 F. Supp. 955.

We do not agree with petitioner that it apprised respondent of its claim for 1943 by the incorporation by reference of all of its applications for relief and its various memoranda thereto, as each claim

referred to a specific year and in none was there a reference to the carry-back claim now made for 1943. And so, with the memoranda. They only referred to the substance of the section 722 relief requested. Nor can we uphold the contention that respondent, being aware of petitioner's right to the refund because of the carry-back, considered it as a claim by petitioner. Respondent's allowance of the carry-back in 1944 and in arriving at that computation his taking into account the carryback that was available in 1943 did not relieve petitioner of its duty to claim such refund in 1943 as it did in 1944.

Petitioner appears to be in a similar position of the taxpayer in *Lockhart Creamery*, *supra*, where its original claim of constructive average base period net income was sufficiently large so that it owed no excess profits tax for the taxable year without the use of credit carry-overs from the preceding 2 years. However, it later computed in its brief a constructive average base period net income of a smaller amount, "based upon a much more realistic estimate arrived at after a more careful consideration of the facts," and, "Had the smaller and not quite so exaggerated estimates been used by petitioner in its claim for relief, perhaps petitioner would have recognized the importance of setting forth in no uncertain terms its claim for the carry-over credits." Herein, petitioner, no doubt, felt that the constructive credit it claimed, if allowed, would relieve it of its excess profits tax for 1943 and the carry-back from 1945 would not be needed. Upon realizing the facts of the situation, even in time to file a timely claim for a refund, the claim it finally filed was in fact not timely.

Petitioner feels that somewhere, someway, it should receive the benefit of the carry-back, but while there may be equity in favor of petitioner as to the computation of its tax under section 722, this Court's determination as to the sufficiency of a claim for refund cannot be based upon equitable consideration. As stated in *Nemours Corporation* v. *United States*, 188 F. 2d 745, 749:

We think it a fair statement, however, that courts are not invited to import equitable considerations into tax cases. * * *

A long-standing statutory provision with regard to tax refunds is that suits may be brought only after a claim for refund has been filed with the Commissioner in accordance with the law and Treasury Regulations. The Regulations governing refunds under the statute in question here provide that "The claim must set forth in detail * * * each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof." * * * It is to be noted that both the grounds for recovery and the facts supporting them must be shown. The taxpayer stated as its ground for refund Section 26 (f) and made its computation accordingly. That does not, under the decisions, give him a right to claim under some other section. * * *

This is hard law, no doubt. Perhaps it is necessarily strict law in view of the scope of the operations of a fiscal system as large as that of the United States. Whether that is so we are not called upon to say. We apply the rule; we do not make it. It is to be observed that recovery of claims against the Government has always been the subject of a strict compliance requirement. The recovery of claims for tax refunds is but an application of this broad and strict rule.

This is not a case where respondent has waived the strict compliance with the regulations. He insists upon full compliance, which he may do. See *Angelus Milling Co.* v. *Commissioner, supra; United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62; *United States* v. *Humble Oil & Refining Co.*, 69 F. 2d 214.

Petitioner refers to *A. Teichert & Son, Inc.*, 18 T. C. 785, as support for its argument that "regardless of whether or not specifically claimed, either originally or in any amendment, the petitioner's application for relief was sufficient to include relief due to the instant carry-back because the carry-back is a mandatory computation necessarily involved in computing the amount of relief to which the petitioner is entitled." It argues that the carry-back is not a separate ground of relief, but merely a step in the computation of the refund due under section 722.

In the *Teichert* case the problem concerned the 80 per cent limitation contained in section 710 (a) (1) (B), together with the interplay of the post-war credit provided in section 780. The taxpayer contended for the use of a method which gave it a greater post-war credit, and it was to its advantage that as much as possible of its total taxes due be allocated to the excess profits tax rather than to the income tax. Consequently, the taxpayer argued that it had the option to use or not to use an unused excess profits carry-back in computing its "adjusted excess profits net income." We held that the provisions of section 710 (a) (3), providing for the deduction of unused excess profits credits in the determination of adjusted excess profits net income, are mandatory and do not give an election as to the application of an available carry-back of an unused credit. It is readily discernible that there was not involved either a question of relief under section 722 or a claim for a refund or a credit. There, the computation of the tax was without section 722 being involved. Here, the tax has been computed under section 722. We think the *Teichert* case is not in point. To uphold the petitioner's argument would be to ignore sections of the Code and regulations under which taxpayers are required to file proper and sufficient claims for refund, for each taxable year for which a refund is sought. Such contention was rejected in *Byron Weston Co.* v. *United States, supra.* See also *Lockhart Creamery, supra,* and *Blum Folding Paper Box Co., supra,* which have upheld the regulations here involved.

Since petitioner has filed no timely 1943 refund claim based on a carry-back of the unused 1945 excess profits credit, nor any matter that may be considered as an informal claim, since it has not shown that respondent waived strict compliance with the regulations, and since the specific claim therefor was filed out of time, we must sustain the determination of the respondent.

Other matters have been disposed of by stipulation of the parties.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*

