H. J. HEINZ COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44694. Filed April 10, 1959.

*Percy W. Phillips, Esq.*, for the petitioner.
*Albert J. O'Connor, Esq.*, for the respondent.

OPINION.

TRAIN, *Judge:* The Commissioner disallowed in part the petitioner's applications for relief under section 722 [1] for a number of its fiscal years including that ended April 30, 1943. In making his determina-

---

[1] All section references are to the Internal Revenue Code of 1939, unless otherwise specified.

tion with respect to 1943, the Commissioner refused to allow an unused excess profits carryover from 1941 to 1943 in the amount of $42,881.72. The sole issue for our decision is whether petitioner is entitled to the carryover in question.

All of the facts are stipulated and are hereby found as stipulated.

Petitioner, a Pennsylvania corporation, filed its income and excess profits tax returns on an accrual basis for the fiscal year ended April 30, 1943, with the then collector of internal revenue for the twenty-third district of Pennsylvania at Pittsburgh.

Petitioner, on its excess profits tax return for its fiscal year ended April 30, 1941, computed its excess profits tax under section 711 (a) (1) with an average base period net income credit (hereinafter called ABPNI credit), in the amount of $3,308,115.46. There was an unused excess profits credit (hereinafter called unused credit), arising in the fiscal year 1941 in the amount of $786,793.97, later adjusted to $548,009.54 by application of section 204(c) of the Revenue Act of 1942. The latter amount was claimed specifically by petitioner as an unused excess profits credit carryover (hereinafter caller carryover), on its excess profits tax return for the fiscal year 1942. This carryover from 1941 when combined with the ABPNI credit resulted in there being no excess profits tax due for that year. On the return for the fiscal year ended April 30, 1943, a carryover from 1941 in the amount of $360.13 was claimed by petitioner as still unused after 1942. Excess profits taxes in the amount of $560,853.19 were paid for the fiscal year ended April 30, 1943.

On May 23, 1944, petitioner filed a timely claim for refund of $33,371.96 of its 1943 income and excess profits taxes. The claim was based on increases in taxes paid the State of Pennsylvania in petitioner's 1941, 1942, and 1943 fiscal years. The increase in the 1941 fiscal year State taxes was claimed as a deduction from net income for 1941 increasing the unused credit arising in that year by the same amount. The increase in the fiscal year 1942 State taxes likewise reduced net income for that year, thereby increasing the carryover available for 1943 by $61,513.98. The increased carryover for 1943 was the specific basis for the petitioner's refund claim of 1943 excess profits taxes filed May 23, 1944.

In 1947, respondent audited petitioner's income and excess profits tax returns for 1942 to 1946, inclusive, and made adjustments to the 1942 and 1943 net incomes.

On May 20, 1949, respondent determined deficiencies in income and excess profits taxes for 1942 and 1943. In this determination, respondent made allowances for additional taxes paid the State of Pennsylvania in the following amounts:

| | |
|---|---|
| 1942 | $24,772.12 |
| 1943 | 15,842.72 |

The statement accompanying respondent's 1949 deficiency notice declared that "careful consideration" had been given to petitioner's claim for refund filed May 23, 1944,[2] which, as we have found above, had asserted an increased carryover for 1943. The Commissioner's excess profits tax computations for 1942 contained a specific adjustment for an unused credit in the amount of $598,024.78 arising in 1941. Respondent has at all times since agreed that the amount of unused credit arising in 1941 is $598,024.78. Net income for 1942 was increased over additional deductions by the amount of $157,158.28. This increase in net income for 1942 more than offset the increase in the carryover from 1941 which had been the specific basis for the 1943 refund claimed by the petitioner on May 23, 1944. As a result of these adjustments, no carryover was available for the fiscal year ended April 30, 1943, and none was allowed. By letter dated October 21, 1949, respondent rejected petitioner's refund claim filed May 23, 1944. Petitioner did not contest this action and paid the deficiencies as determined in the notice of May 20, 1949.

Petitioner signed waivers for the taxable years ended April 30, 1941, 1942, and 1943 extending the period for assessment of income and excess profits taxes to June 30, 1949.

On December 28, 1949, petitioner filed timely applications on Form 991 for excess profits tax relief under section 722 for its fiscal years 1941 through 1946, inclusive. The constructive average base period net income credit (hereinafter called CABPNI credit), claimed was $4,893,085. The Form 991 filed with respect to 1941 declared on its face: "Claim is filed for the purpose of establishing the amount of excess profits credit to be carried forward." Excess profits net income in the amount of $4,572,413.03 was returned for 1942. No carryover was claimed on the Form 991 filed with respect to 1943. The CABPNI credit claimed on the form was more than sufficient to eliminate any excess profits tax liability for that year.

By letter dated January 9, 1952, petitioner was advised that after considering its claim filed on December 28, 1949, the Excess Profits Tax Council had determined that it was entitled to no CABPNI credit for the year ended April 30, 1941, but that the Council had granted a CABPNI credit in the amount of $4,238,000 for the years ending April 30, 1942, to April 30, 1946, inclusive. This amount was $655,085 less than that claimed by petitioner. Petitioner agreed to the determination of the Council.

On February 25, 1952, petitioner filed an amended Form 991 for

---

[2] The statement actually refers to this claim for refund as having been filed June 5, 1944. No claim was filed on that date. The May 23, 1944, claim which was stamped as having been received on that date by the collector was also stamped as having been received June 5, 1944, by the "Claims Control Section." From this circumstance, we have concluded that the reference to a claim filed June 5, 1944, was in reality a reference to the May 23, 1944, claim.

the fiscal year ended April 30, 1943, in which the benefit of an unused excess profits credit carryover in the amount of $51,711.75 was claimed.

On February 26, 1952, respondent mailed petitioner a recomputation of its excess profits tax liability resulting from the action of the Excess Profits Tax Council. This recomputation was in fact completed on February 18, 1952. Additional adjustments were made to increase income for 1942 and 1943 as a result of an agent's report. Additional State taxes were allowed as deductions for those years in the amounts of $514.36 and $1,724.42, respectively. In computing the 1943 excess profits taxes, respondent specifically stated that he did not allow the unused excess profits credit carryover in the amount of $51,711.75 from 1941 "as per Regulations 112, T.D. 5393, C.B. 1944 page 415 at page 421 and also as in the case of Lockhart Creamery, 17 T.C. No. 136." Petitioner agreed with all computations except with respect to the disallowance of the carryover for 1943.

By letter dated March 27, 1952, respondent recomputed the 1942 and 1943 excess profits taxes pursuant to an additional report from a revenue agent. While income was increased for each year, additional State taxes were allowed in the following amounts:

1942 _____ $156.19
1943 _____ 15.22

Respondent again stated in this letter that the unused excess profits credit carryover, adjusted to the amount of $47,881.72, was disallowed in computing the tax for 1943. Petitioner again agreed with all computations except the disallowance of the carryover for 1943.

Finally, by a letter dated July 11, 1952, respondent gave notice in accordance with the provisions of section 732 of the disallowance in part of the claims for refund asserted in petitioner's applications for relief.

Since the filing of this petition, additional adjustments have been made to 1942 and 1943 income resulting in further reduction of the carryover. It is now agreed that the correct amount of the disputed carryover is $42,881.72 and that this amount is allowable as a credit on the excess profits tax return for 1943 if a proper claim for such credit has been made.

If the carryover in issue arose from a credit based upon a CABPNI under section 722, the claim filed February 25, 1952, would be barred. This Court has consistently held that, where a claim for section 722 relief did not specifically assert a claim for a carryover arising by application of section 722 in another year, such a specific claim being required by the regulations under section 722, a later claim for the benefit of the carryover is barred if filed beyond the period provided by the statute of limitations, absent a waiver by the Commissioner of

the applicable section 722 regulations. *Headline Publications, Inc.*, 28 T.C. 1263 (1957) affd. 263 F. 2d 541 (C.A. 2, 1959); *Utility Appliance Corporation*, 26 T.C. 366 (1956); *Ainsworth Manufacturing Corporation*, 24 T.C. 173 (1955); *May Seed & Nursery Co.*, 24 T.C. 1131 (1955), affd. 242 F. 2d 151 (C.A. 8, 1957); *St. Louis Amusement Co.*, 22 T.C. 522 (1954); *Barry-Wehmiller Machinery Co.*, 20 T.C. 705 (1953); *Lockhart Creamery*, 17 T.C. 1123 (1952); and *Packer Publishing Co.*, 17 T.C. 882 (1951).

While we recognize that the carryover in question bears a close relationship to the application of section 722, such a relationship does not necessarily lead to the conclusion asserted by respondent, namely, that the carryover arises from a credit based upon a CABPNI. A careful consideration of the facts of this case has satisfied us that the carryover does not arise from a CABPNI credit.

The excess profits tax return for 1941 claimed an excess profits tax credit computed under section 713 in the amount of $3,308,115.46. This amount, when applied against the excess profits net income for 1941, produced an unused credit under section 710(c)(2) [3] originally in the amount of $786,793.97, later adjusted to $598,024.78. Under section 710(c)(3)(B),[4] this latter amount is the carryover to each of the 2 succeeding taxable years, namely, 1942 and 1943. Thus, the unused credit in the amount of $598,024.78 clearly arose in a year, 1941, with respect to which a CABPNI was not granted.

Respondent further contends that no carryover would be available for 1943 absent section 722 relief for 1942, and that, therefore, application of section 722 to 1942 was what necessarily gave rise to the carryover to 1943.

However, the carryover of an excess profits credit is a carryover of an unused credit from a year in which the excess profits credit of that year exceeds the excess profits net income of that same year. Sec. 710(c)(2) and (3)(B), *supra*. As we have seen above, this occurred in 1941. Petitioner's excess profits tax return for 1942 showed an

---

[3] SEC. 710. IMPOSITION OF TAX.

   (c) UNUSED EXCESS PROFITS CREDIT ADJUSTMENT.—

   \*     \*     \*     \*     \*     \*     \*

   (2) DEFINITION OF UNUSED EXCESS PROFITS CREDIT.—The term "unused excess profits credit" means the excess, if any, of the excess profits credit for any taxable year beginning after December 31, 1939, over the excess profits net income *for such taxable year*, computed on the basis of the excess profits credit *applicable to such taxable year*. \* \* \* [Emphasis added.]

[4] SEC. 710. IMPOSITION OF TAX.

   (c) UNUSED EXCESS PROFITS CREDIT ADJUSTMENT.—

   \*     \*     \*     \*     \*     \*     \*

   (3) AMOUNT OF UNUSED EXCESS PROFITS CREDIT CARRY-BACK AND CARRY-OVER.—

   \*     \*     \*     \*     \*     \*     \*

   (B) Unused Excess Profits Credit Carry-Over.—If for any taxable year beginning after December 31, 1939, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-over for each of the two succeeding taxable years \* \* \*

excess profits net income in the amount of $4,572,413.03, while the excess profits credit for 1942 computed under section 722 was only $4,026,100. There was no excess of the CABPNI credit over the excess profits net income for 1942. Therefore, there was no unused CABPNI credit for 1942. Furthermore, the unused credit for any 1 year is the carryover for each of the 2 succeeding taxable years. Sec. 710(c)(3)(B), *supra*. If respondent's contention that the unused credit actually arose in 1942 were correct, it would necessarily follow that the unused credit would be a carryover for each of the 2 succeeding taxable years, namely, 1943 and 1944. That this is not so in the instant case demonstrates the fallacy of respondent's reasoning.

Respondent further asserts that by the proper method of computation it is actually the CABPNI credit which is in excess of adjusted excess profits net income for 1942, and not the unused credit from 1941.

A reading of the statute leads us to a different conclusion. Section 710(c)(3)(B) provides for the method of computing the credit carryover for the second succeeding taxable year (in this case 1943) as follows:

except that the carry-over in the case of the second succeeding taxable year shall be the excess, if any, of the amount of such *unused excess profits credit* over the adjusted excess profits net income for the intervening taxable year computed for such intervening taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit or to any unused excess profits credit carry-back, and (ii) without the deduction of the specific exemption provided in subsection (b)(1). * * * [Emphasis added.]

Applying the above statutory provision to the present situation, the adjusted excess profits net income for 1942 is the excess of $4,572,413.03 net income over the CABPNI credit for that year in the amount of $4,026,100, or an adjusted excess profits net income of $546,313.03. The excess credit for 1942 is the excess of the unused credit carryover from 1941 in the amount of $598,024.78 over this adjusted net income for 1942 of $546,313.03, or $51,711.75.[5] Clearly, the carryover to 1943 of this amount would not be the carryover of a CABPNI excess, but of the unused credit which arose in 1941 and which was not absorbed in 1942.

Since petitioner requested section 722 relief for 1943, respondent further contends that any credit carryover available for that year must be claimed in accordance with the requirements of section 722 and Regulations 112, section 35.722–5.

This contention is not supported by either the statute or the applicable regulations. Section 722 itself contains no requirement as to the

---

[5] This amount has since been adjusted to $42,881.72.

method of claiming the benefit of a carryover, simply granting broad regulatory authority to the Commissioner to prescribe rules governing applications for the benefits of the section. The regulation upon which respondent relies [6] does not prescribe the method by which the carryover at issue here is to be claimed. By its very terms, the regulation, to the extent here relevant, deals only with the method of claiming a carryover of an unused excess profits credit where the unused credit is produced by a "credit based upon a constructive average base period net income." As we have seen, the unused credit with which we are here concerned cannot be so classified.

It may be that, under the broad grant of regulatory authority contained in section 722, the Commissioner could have prescribed the method by which a carryover of the type involved here had to be claimed. The fact is that he did not. This being the case, we conclude that petitioner is not bound to claim the carryover in question in accordance with the provisions of Regulations 112, section 35.722–5. Therefore, the authorities cited by respondent,[7] insofar as they relate to claims for carryovers arising in years in which a CABPNI computation was applied, are not controlling.

Nevertheless, while we have decided that the petitioner was not required to meet the strict provisions of Regulations 112, section 35.722–5, with respect to the carryover, we are satisfied that the Form 991 filed December 28, 1949, would have represented an appropriate procedure for assertion of the benefit of the carryover had it in fact

---

[6] Regulations 112, sec. 35.722–5, as amended by T.D. 5393, 1944 C.B. 415, 421.

SEC. 35.722–5 APPLICATION FOR RELIEF UNDER SECTION 722.—(a) *Requirements for filing.* * * *

\* \* \* \* \* \* \*

In order to obtain the benefits of an unused excess profits credit for any taxable year for which an application for relief on Form 991 (revised January, 1943) was not filed, using the excess profits credit based on a constructive average base period net income as an unused excess profits credit carry-over or carry-back, the taxpayer, except as otherwise provided in (d) of this section, must file an application on Form 991 (revised January, 1943) for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied within the period of time prescribed by section 322 for the filing of a claim for credit or refund for such latter taxable year. In addition to all other information required, such application shall contain a complete statement of the facts upon which it is based and which existed with respect to the taxable year for which the unused excess profits credit so computed is claimed to have arisen, and shall claim the benefit of the unused excess profits credit carry-over or carry-back. If an application on Form 991 (revised January, 1943) for the benefits of section 722 has been filed with respect to any taxable year, or if the filing of such application is unnecessary under (d) of this section, and *if the excess profits credit based upon a constructive average base period net income* determined for such taxable year produces an unused excess profits credit for such year, to obtain the benefits of such unused excess profits credit as an unused excess profits credit carry-over or carry-back the taxpayer should file an application upon Form 991 (revised January, 1943), or an amendment to such application if already filed, for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied. [Emphasis added.]

[7] *Lockhart Creamery*, 17 T.C. 1123 (1952) ; *Packer Publishing Co.*, 17 T.C. 882 (1951) ; *Barry-Wehmiller Machinery Co.*, 20 T.C. 705 (1953) : *St. Louis Amusement Co.*, 22 T.C. 522 (1954) ; *May Seed & Nursery Co.*, 24 T.C. 1131 (1955) ; *Utility Appliance Corporation*, 26 T.C. 366 (1956) ; likewise *Headline Publications, Inc.*, 28 T.C. 1263 (1957).

been claimed therein. The very Regulations 112, section 35.722–5, upon which respondent relies, provide in part as follows:

(c) *Claim for refund.*—The application on Form 991 or Form 991 (revised January, 1943) shall be considered a claim for refund or credit with respect to the excess profits tax for the taxable year for which the application is filed which has been paid at or prior to the time such application is filed. * * *

We do not understand the respondent to claim otherwise. Indeed, the assumption is implicit throughout this record that the carryover would have been allowed had it in fact been claimed on the Form 991. Therefore, since the carryover could have been claimed properly on the Form 991 filed December 28, 1949, the only question remaining for decision is whether the amendment to the same Form 991 filed February 25, 1952, was timely.

The amended Form 991 filed February 25, 1952, in which petitioner specifically claimed the benefit of the carryover from 1941, was admittedly filed after the statutory period and would be barred unless it can be considered a timely amendment to the Form 991 timely filed December 28, 1949. It will be considered a timely or proper amendment to a timely claim if there had been no final determination of the timely claim at the time the amendment was filed, and if the timely claim included grounds for relief which were asserted specifically in the amendment. *United States* v. *Memphis Cotton Oil Co.*, 288 U.S. 62 (1933).

While respondent had mailed to petitioner on February 26, 1952, a recomputation of its tax liability resulting from the action of the Excess Profits Tax Council, it was not until July 11, 1952, that respondent gave petitioner the notice required by section 732 of the disallowance in part of its claims for relief. Thus, July 11, 1952, was the date of final determination of the December 28, 1949, claim. *Rockford Screw Products Co.*, 21 T.C. 834 (1954). It follows that the amended claim filed February 25, 1952, was filed prior to a final determination of the claim by respondent.

The only issue left to be decided in determining the applicability of the rule of *United States* v. *Memphis Cotton Oil Co.*, *supra*, is whether the December 28, 1949, claim included the grounds for refund which were asserted specifically in the claim filed February 25, 1952. We hold that it did.

Petitioner had specifically claimed the carryover to 1943 on the excess profits tax return originally filed for that year. Petitioner had also specifically claimed the carryover to 1943 on the Form 843 filed on May 23, 1944, for a refund of that year's taxes. The respondent's deficiency notice mailed May 20, 1949, and the statement attached thereto, covering the petitioner's tax liability for the years 1942–1945, inclusive, gave full recognition to the existence of the carryover. The

accompanying statement declared with respect to respondent's excess profits tax computation for 1942:

An unused excess profits credit in the amount of $598,024.78, arising in the Fiscal year April 30, 1941, has been applied against the excess profits net income for the fiscal year ended April 30, 1942 under the carry-over provisions of the law * * *

That adjustment absorbed the entire carryover so that, under the respondent's determination, no carryover remained available for 1943 and the same statement referred to above contains no reference to the carryover in the 1943 computations. However, since there was but one deficiency notice covering all of the years 1942–1945, inclusive, and but one accompanying statement, the conclusion is inescapable that the respondent gave full effect therein to the claimed carryover to the extent that his computation made it applicable. Indeed, as we have found, the statement declared with respect to all of the years involved in the deficiency notice that careful consideration had been given to the May 23, 1944, refund claim which had asserted the benefit of the carryover. Furthermore, subsequent to his mailing of the deficiency notice on May 20, 1949, the respondent periodically increased the allowance for deductions asserted in the claim of May 23, 1944, particularly with respect to State taxes.

Respondent recomputed petitioner's excess profits tax liability pursuant to section 722 on the basis of the Excess Profits Tax Council's determination. This recomputation, although mailed to petitioner on February 26, 1952, was in fact completed on February 18, 1952, 7 days before petitioner mailed its amended refund claim on February 25, 1952. Respondent considered the carryover issue in this recomputation. As we have seen, the Forms 991 for the years 1941–1946, inclusive, were all filed by the petitioner at the same time. The respondent's recomputation with respect to all of those years together was contained in his letter of February 26, 1952. The recomputation with respect to 1942 gave full effect to the carryover and showed an excess credit as unused and, thus, available for carryover to 1943. Thereupon, in his recomputation for 1943, the respondent did not give effect to the carryover which his 1942 recomputation showed to be available, stating that the carryover to the fiscal year 1943 was not allowed because of failure to comply with Regulations 112, T.D. 5393, 1944 C.B. 415, 421; further citing our decision in *Lockhart Creamery*, *supra*.

These circumstances, coupled with the fact that respondent had been on continuing notice of the existence of the carryover, constitute a consideration of the claim on the merits within the meaning of *United States* v. *Memphis Cotton Oil Co.*, *supra*. See *Wilmington Gasoline Corporation*, 27 T.C. 500 (1956).

The amended claim involved no new research on the part of the

respondent, and the facts necessary to dispose of the amended claim must of necessity have been considered in connection with the original application. Therefore, from all of the circumstances of this case, we hold that the amendment filed February 25, 1952, was a timely amendment to the December 28, 1949, claim and may be properly considered under the rule of the *Memphis Cotton Oil Co.* case.

Reviewed by the Special Division.

*Decision will be entered for the petitioner.*