FEATURE PUBLICATIONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41911.   Filed November 20, 1957.

*Sidney Gelfand,* for the petitioner.
*Emil Sebetic, Esq.,* for the respondent.

318

## OPINION.

HARRON, *Judge:* The question is whether petitioner made timely claims for unused excess profits credits, originating in 1941, 1942, and 1946, arising from the use of a constructive average base period net income for carryover and carryback purposes so that a constructive average base period net income for each of the years 1941, 1942, and 1946 may be employed for the purpose of computing the unused excess profits credit carryovers from 1941 and 1942, and the unused excess profits carryback from 1946 to 1944. The Commissioner has determined that such claim was barred by the expiration of the applicable statute of limitations at the time applications were filed by petitioner.

Petitioner contends, in general, that its applications for carryovers and carryback of increased unused excess profits credits originating in 1941, 1942, and 1946, based on a constructive average base period net income for each of those years, were amendments to applications for excess profits tax relief for its taxable years 1943 and 1944, under section 722 (b) (4), which were filed timely, and that, therefore, the claimed carryovers and carryback are not barred by the statute of limitations.

Petitioner's excess profits tax liability only for its fiscal year 1944 is at issue in this case. Petitioner seeks additional adjustments so as to obtain refund, or overassessment, of the entire amount of the excess profits tax for 1944 which it has paid, $18,111.17. With respect to the amount which has been paid, the Commissioner has allowed an increased excess profits credit for 1944 based on a constructive average base period net income of $8,300, in the amount of $7,885, thereby reducing the excess profits tax liability to $10,043.32 from $18,111.17, a reduction of $8,067.85, for which he has allowed a tentative overassessment of $4,528.78, leaving the overassessment determined in the statutory notice in the amount of $3,539.07. The Commissioner determined that no part of the unused excess profits carryback from

1945 was available for application to 1944 under section 710 (c) (3) (A) and (B), all of such carryback having been applied to 1943. At the trial, however, he conceded that an unused excess profits credit arising in 1946 in the amount of $2,709.57, computed on the basis of invested capital and without regard to section 722, should have been carried back to 1944. This is to be done under a Rule 50 computation, which will reduce the liability for excess profits tax for 1944 to $7,333.75, and will increase the amount of the overassessment. Petitioner now seeks to recover all or part of $7,333.75 excess profits tax for 1944 under its present contentions relating to carryovers from 1941 and 1942 and carryback from 1946.

The year 1943 is involved in this case under petitioner's present claims to the following extent: If petitioner is entitled to a CABPNI for 1941 and 1942 and carryovers based thereon, there would be carryovers of unused excess profits credit arising in 1942 to 1943 and 1944, and, also, since a carryover from 1942 to 1943 would eliminate all of the excess profits tax net income for 1943, it would follow that the carryback from 1945 and 1946 would apply to 1944 and eliminate the excess profits tax liability for 1944.

Petitioner did not file in time any applications for relief under section 722, such as application for determination of a constructive average base period net income, for its taxable years 1941, 1942, and 1946, because, no doubt, that was not necessary; for each of those years it did not have any adjusted excess profits net income. The timely, original applications which it filed for determination of a CABPNI for 1943 and 1944 did not include any claim for the benefits of, or any reference to, any unused excess profits credits from 1941, 1942, 1946, or any other years, either to be carried over or carried back to 1943 and 1944, computed with or without the benefit of a CABPNI. Admittedly on January 15, 1950, the running of the applicable statute of limitations under sections 275 and 322 (b) (6) had expired on the assessment, collection, or refund of taxes, including any refunds arising out of or by reason of any unused excess profits credits, whether or not such credits were based on a CABPNI under section 722, with respect to 1941, 1942, 1943, 1944, and 1946. It is obvious that the new Forms 991, filed on March 14, 1950, if considered alone, as applications which were equivalent to that which is prescribed by the Commissioner's regulations, Regs. 112, sec. 35.722–5 (a), were not filed within the time required under section 322 (b) (6).

In several cases this Court has considered the same issue under similar facts to those presented here, as follows: *Lockhart Creamery*, 17 T. C. 1123, 1140; *Nielsen Lithographing Co.*, 19 T. C. 605, 613; *Barry-Wehmiller Machinery Co.*, 20 T. C. 705; *St. Louis Amusement Co.*, 22 T. C. 522; *May Seed & Nursery Co.*, 24 T. C. 1131, affd. 242 F. 2d 151, certiorari denied 355 U. S. 839; *Utility Appliance*

*Corporation*, 26 T. C. 366. The same arguments were made in those cases as petitioner makes here. They were rejected and the issue here is foreclosed by the decisions of this Court in the above cases unless either (1) the Commissioner waived the formal requirements of his regulations, sec. 35.722–5 (*a*), Regs. 112, as amended, or (2) the facts show that a new ground for recovery of excess profits tax for 1944 properly could be introduced after the statute had run by amending the pending applications for section 722 relief which had been filed timely for 1943 and 1944. Cf. *Packer Publishing Co.*, 17 T. C. 882, 898, reversed on other issues 211 F. 2d 612; *Martin Weiner Corp.*, 26 T. C. 128; *Hydraulic Press Manufacturing Co.*, 27 T. C. 278; *Wilmington Gasoline Corporation*, 27 T. C. 500; *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62; *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 293, 297; *United States* v. *Andrews*, 302 U. S. 517; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528; *Pink* v. *United States*, 105 F. 2d 183; *H. Fendrich, Inc.* v. *Commissioner*, 242 F. 2d 803, reversing 25 T. C. 262.

Respondent had no occasion, prior to the expiration of the statute of limitations on January 15, 1950, to consider or compute the amount of unused excess profits credit for each of the years 1941, 1942, and 1946 which would arise in each of those years if a CABPNI were employed for each of those years for the purpose of carryovers and carryback to 1943 and 1944. Furthermore, the record before us does not show that respondent, in considering petitioner's timely, original applications for relief under section 722 for the taxable years 1943 and 1944, had before him the data relating to 1941 which would be necessary in making adjustments in the CABPNI which would apply to 1941 which it has been stipulated would amount to only $4,000. The record does not show that respondent had before him the data for computing the amount of an unused excess profits credit for 1941, 1942, and 1946, using a CABPNI, which would be available for carryovers to 1943 and 1944, and for carryback from 1946, such as the data which was stipulated for the pupose of the trial of this case relating to the figures for excess profits net income, adjusted excess profits net income, and excess profits credit computed without a CABPNI for 1941, 1942, and 1946, or that he had before him the returns for each of those years. And the record before us does not show that respondent in considering petitioner's timely, original applications for relief for 1943 and 1944, under section 722, up to January 15, 1950, or thereafter when the new Forms 991 were filed, considered or determined the amount of a CABPNI applicable to 1941, or the amount of an unused excess profits credit based on a CABPNI for 1941, 1942, and 1946. The following observation of this Court in *Lockhart Creamery, supra* at 1142, applies here:

The computation of an unused excess profits credit, like the net operating loss deduction, is by its own nature quite complicated and particularly is this so

when the credit is to be increased by reason of section 722 relief. We are persuaded that for administrative reasons the formal and detailed requirements which here deny petitioner any excess profits credit carry-over based on section 722 relief for the years 1940 and 1941, were correctly prescribed by the Commissioner. When the validity of regulations pertinent here is considered in view of the language of the Supreme Court in *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 895, we are further convinced that the regulations were lawfully prescribed in accordance with authority previously granted by Congress. Cf. *Blum Folding Paper Box Co.*, 4 T. C. 795.

It is clear from the entire record that at all times after the filing of the new Forms 991 on March 14, 1950 (which made claim for the first time for carryovers and carryback of unused excess profits credit from other years to 1943 and 1944), no representative of the respondent ever treated the new claims as part of, or in conjunction with, the original, timely applications for relief for 1943 and 1944, insofar as the new claims referred to carryovers from 1941 and 1942 and carryback from 1946. Respondent's representatives at all times treated the new claims for carryover and carryback of unused excess profits credits as new and separate claims, the timeliness of which had to be considered under the applicable statutes of limitations. The letters (in evidence) from representatives of the respondent show that, in correspondence with petitioner's representative, the claims which were filed on March 14, 1950, were in fact treated as separate, new claims, and respondent advised petitioner that whether or not any relief thereunder could be granted would depend on whether the claims filed on March 14, 1950, were timely under the applicable statutes of limitations. The record before us shows that in keeping with the above, respondent recognized that the new claim filed on March 14, 1950, as a so-called amendment to the timely, original application for relief for 1944, was timely only insofar as it made claim for an unused excess profit credit carryback from 1945 because the period of limitations relating to the taxable year 1945 had not then run and did not expire until June 30, 1950. Therefore, with respect to 1945, a constructive average base period net income for 1945 was determined by the Excess Profits Tax Council, an excess profits credit in 1945 was also determined, and carryback from 1945 of unused excess profits credit was allowed.[1] Also, in keeping with the above, respondent regarded and

---

[1] On brief respondent states that for the purpose of determining whether any portion of the unused credit, based on a CABPNI, for 1945, of $4,063.44, was available as an unused excess profits carryback to 1944, he made the computations required in section 710 (c) ; that in computing the excess profits credit adjustment for 1943, he used the excess profits credits for 1941 and 1942 computed without the benefits of section 722 ; and that under this computation no part of the unused credit for 1945 was available as a carryback to 1944.

There is no issue in this case about the order or the manner in which respondent applied the various excess profits credits in making the required computation under section 710 (c). There is no question that section 710 (c) was properly applied by respondent. Petitioner's objection is that respondent used credits of 1941, 1942, and 1946 without the benefits of a CABPNI under section 722.

treated the new claims filed on March 14, 1950, relating to claims for unused credit carryovers from 1941 and 1942 and carryback from 1946, based on constructive average base period net income, as untimely, he gave them no consideration, and he rejected them.

The so-called amendments to the applications for section 722 relief for 1943 and 1944 made claim for relief upon an entirely new ground than was set forth in the timely, original applications. Claim for carryover and carryback of unused credits from other years is an entirely different type of and ground for relief than the relief provided in section 722. The carryover and carryback from other years of unused excess profits credits are provided for in section 710 (c) (3). Respondent, in his regulations, sec. 35.722–5 (a), Regs. 112, as amended, requires, *inter alia*, that in order to obtain relief under section 722, the formal application on Form 991 must set forth each ground under section 722 upon which the claim for relief is based, sufficient facts to apprise the Commissioner of the exact basis of the relief claimed, and all of the facts necessary to establish the claim for relief; and it is stated that—

*No new grounds presented by the taxpayer after the period of time for filing a claim for credit or refund prescribed by section 322, * * * will be considered* in determining whether the taxpayer is entitled to relief.

\*　　\*　　\*　　\*　　\*　　\*　　\*

In order to obtain the benefits of an unused excess profits credit for any taxable year for which an application for relief on Form 991 * * * was not filed, using the excess profits credit based on a constructive average base period net income as an excess profits credit carry-over or carry-back, the taxpayer, * * * must file an application on Form 991 (* * *) for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied *within the period of time prescribed by section 322 for the filing of a claim for credit or refund for such latter taxable year*. In addition to all other information required, such application shall contain a complete statement of the facts upon which it is based *and which existed with respect to the taxable year for which the unused excess profits credit so computed is claimed to have arisen, and shall claim the benefit of the unused excess profits credit carry-over or carry-back.* * * * [Italics supplied.]

Upon the entire record, it is concluded that respondent did not waive any of his regulations in connection with petitioner's claims for carryovers or carryback of unused excess profits credits from other years, using an excess profits credit based on a constructive average base period net income as an unused excess profits credit carryover or carryback, to either 1943 or 1944. Petitioner's reliance upon *Packer Publishing Co., supra; Martin Weiner Corp., supra; Hydraulic Press Manufacturing Co., supra;* and *Wilmington Gasoline Corporation, supra,* is misplaced. Each of those cases is, on this point, distinguishable on its facts. Although the Commissioner can waive the specific requirements set forth in his regulations, and although his consideration of the merits of a claim may constitute such

waiver, in this case the record clearly indicates that there was no waiver, either expressed or implied, by the respondent. The Field Committee originally rejected the claims filed on March 14, 1950, as untimely, and the statutory notice did not go into the merits, and it did disallow carryovers from 1941 and 1942, and carryback from 1946, based on a constructive average base period net income. After the issuance of the statutory deficiency notice, shortly before the trial of this case, and *solely* for the purpose of stipulating all factors necessary to a decision by this Court, respondent stipulated what amounts could be used in a Rule 50 computation as a constructive average base period net income for the purpose of computing unused credits for each of the fiscal years 1941, 1942, and 1946 for carryover and carryback, in the event this Court should hold for the petitioner under the issues presented, but such action on respondent's part in no way represents a waiver of his regulations. We so held in *Headline Publications, Inc.*, 28 T. C. 1263.

Petitioner bases its argument that the respondent waived his regulations with respect to the new claims for carryovers and carrybacks of credits entirely upon the testimony of petitioner's representative that at the last conference with the Excess Profits Tax Council on February 23, 1950, when the timely, original applications for section 722 relief for 1943 and 1944 were being considered by the Council, a member of the Council suggested that petitioner file amended applications making claim for unused credit carryovers and carryback. Petitioner's argument has been carefully considered; it is without merit. The evidence relating to the alleged suggestion is, at best, very weak, and the letters in the record, which show the correspondence between petitioner's representative and representatives of the Commissioner and of the Excess Profits Tax Council, establish that such suggestion, assuming that it was made, was merely a matter of courtesy and was made contingent upon the application of the provisions of the Code prescribing periods of limitations, which would establish whether such amended claims were or were not timely. Petitioner's representative was so advised in the letters. A member of the Council advised petitioner's representative that the so-called amendments to the original applications for relief for 1943 and 1944 were not properly before the Council because they related to a "standard issue," carryovers and carryback of unused credits arising in other years, rather than to issues under section 722. Mimeographs 6035 and 6044, 1946-2 C. B. 97, show that the Excess Profits Tax Council has no jurisdiction over any issues except those arising under section 722. For example, it has no jurisdiction to determine whether claims for unused credit carryover and carryback are timely. It is concluded that there was no waiver by the respondent of the require-

ments of his regulations and no consideration of the merits of the so-called amended claims for relief, as to carryovers from 1941 and 1942, and carryback from 1946, by virtue of the alleged suggestion of a member of the Excess Profits Tax Council.

Petitioner argues next, in effect, that the amendment to the timely claim for relief for 1944 was proper even though filed after the running of the statute of limitations because the new ground for relief (carryovers and carryback), set forth in the untimely amendment to the timely application for relief, was based upon facts which would necessarily have been ascertained by the Commissioner in determining the merits of the original claims for section 722 relief for 1943 and 1944. Petitioner seeks to have us construe the claims filed on March 14, 1950, as amendments to the timely, original claims rather than as new claims, as the Commissioner has determined, under the rationale of *United States* v. *Memphis Cotton Oil Co., supra*, and petitioner cites *Pink* v. *United States, supra*. One factor which petitioner has in mind is that at the time when the claims were filed on March 14, 1950, the Excess Profits Tax Council had not made a final determination upon the timely, original claims for relief for 1943 and 1944, such final determination having been made on April 17, 1950.

The general rule has been stated briefly in *Pink* v. *United States, supra* at 187, as follows:

Whether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investigation of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim, the amendment is proper. * * * United States v. Memphis Cotton Oil Co., 288 U. S. 62. * * *. The rule is otherwise when the amendment requires the examination of new matters which would not have been disclosed by an investigation of the original claim. United States v. Andrews, 302 U. S. 517. * * *

It appears that the Commissioner has provided in section 35.722–5 (a) of Regulations 112, *supra*, that in spite of the doctrine which is summarized in *Pink* v. *United States*, he will not consider "new grounds presented by the taxpayer after the period of time for filing a claim for credit or refund prescribed by section 322, * * * in determining whether the taxpayer is entitled to relief." It has been concluded, above, that respondent, in this instance, did not waive his regulations. Furthermore, this Court has held that the Commissioner's regulation is a valid one. See *Lockhart Creamery, supra* at 1142. We believe, therefore, that petitioner's reliance upon the doctrine which is summarized in *Pink* v. *United States, supra*, is of no avail here. Under closely similar facts, we reached the same conclusion in *Headline Publications, Inc., supra*.

However, in the event that despite respondent's regulation we are required to consider and apply the doctrine restated in *Pink* v. *United*

*States, supra,* it is our conclusion that with respect to the new grounds set forth in petitioner's new claims filed on March 14, 1950, after the statute had run, the new claims were improper and were barred because the facts upon which the new grounds, set forth in the new claims, were based would *not* "necessarily have been ascertained by the Commissioner in determining the merits of the" original, timely applications for section 722 relief for 1943 and 1944. That is to say, the grounds for relief which were set forth in the claims which were filed after the statute had run required that the Commissioner should examine new matters and ascertain the existence of new facts which his examination of the matters covered by the timely, original claims would not have disclosed. For example: In determining the merits of the original, timely claims for section 722 relief for 1943 and 1944, the Commissioner had no occasion for determining what adjustments would have to be made in a constructive average base period net income as it would apply to 1941, or for computing the amounts of any unused excess profits credit originating in 1941 based on a CABPNI, or for computing the amounts of unused excess profits credits arising in 1942 and 1946, based on a CABPNI, or for ascertaining the facts relating to whether there were any unused excess profits credits for 1941, 1942, or 1946, which, if based on a CABPNI, would in being carried over and carried back be available for application to 1944. The original applications, timely filed, called on the Commissioner to investigate only the fiscal years 1943 and 1944. The original applications made no reference to carryovers and carryback from 1941, 1942, and 1946. Investigation of the new claims for carryovers and carryback of unused credits based on a CABPNI required of necessity investigation of the question as to the correct CABPNI for the fiscal years 1941, 1942, and 1946. Thus, when the parties desired to stipulate the CABPNI for the fiscal years 1941, 1942, and 1946 for the purposes of the trial of this case, respondent had to make a further investigation and elicit more information. Such further investigation, made just prior to the trial of this case, disclosed that the correct CABPNI for 1941 would be only $4,000. The fact that some of this information, as to the correct CABPNI for 1942 and 1946, was negative in character and to the effect that the correct CABPNI for 1942 and 1946 would be $8,300, the same as for 1943 and 1944, is irrelevant; it was still information elicited by further investigation. We think the new claims which were filed after the statute had run called for investigation of facts and circumstances not called for by the timely, original applications for section 722 relief for 1943 and 1944, and were, therefore barred by section 322. *Pink* v. *United States, supra; Utility Appliance Corporation, supra.*

Petitioner calls our attention to *H. Fendrich, Inc.* v. *Commissioner, supra.* In *Headline Publications, Inc., supra,* we concluded, under

similar facts, that we were unable to regard the decision by the Court of Appeals in the *Fendrich* case as controlling of the issue and we make the same conclusion here.

Petitioner's last contention, broadly, is that since its claim was timely for the use in 1944 of the unused credit arising in 1945, based on a CABPNI for 1945, then in computing the correct excess profits tax liability for 1944, it is entitled to have all the computations under section 710, necessary to determine the unused excess profits credit carryback from 1945 to 1944 (if any), made using the excess profits credits determined under section 722, i. e., on the basis of a CABPNI, for all the years material in such computations, namely, 1941, 1942, and 1946.

This contention of petitioner must fail for the same reasons that its other contentions have been rejected.

Respondent treated the claim filed on March 14, 1950, as an amendment to the original application for relief on Form 991 relating to the taxable year 1944, as a separate and new claim; and, since it was timely filed as to the fiscal year 1945, he considered on the merits such claim only in respect to the claim for carryback of unused excess profits credit arising in 1945 based on section 722 relief. The respondent in such consideration determined a CABPNI for 1945, for carryback purposes, of $8,300 which gave rise to a constructive excess profits credit of $7,885. Petitioner's excess profits net income for 1945 amounted to $3,821.56 to which the constructive excess profits credit was applied, leaving $4,063.44 as the unused excess profits credit which was available for carryback under the provisions of section 710 (c) (3) (A). Respondent has applied this unused credit for 1945 in the manner specified in section 710. In so doing he made all of the computations required in section 710 (c). See footnote 1. In making such computations, respondent took into account and applied carryovers of unused excess profits credits for 1941 and 1942 computed, however, without the benefits of any CABPNI for 1941 and 1942, having rejected as untimely petitioner's claims for determinations of a CABPNI for 1941 and 1942 for the purpose of using unused excess profits credits based on a CABPNI for carryovers. Respondent did not, in making the computations required by section 710 (c) use the excess profits credit for 1946 in any respect, which he now concedes to have been error. With respect to 1946, respondent's position now is that, under Rule 50, in correcting his error, he should use the excess profits credit for 1946 computed without the benefit of any CABPNI for 1946, since the claim filed on March 14, 1950, as an amendment to the application for section 722 relief for 1944, which referred *inter alia* to unused credit carryback from 1946, was not timely filed.

Under respondent's computations under section 710 (c), no part of the unused credit for 1945 was available to carry back to 1944 after

having been carried back first to 1943. Petitioner does not question the manner or the order of respondent's application of the various unused credits under section 710 (c). Petitioner objects only to respondent's refusal to compute the amounts of excess profits credits and of unused credits for 1941, 1942, and 1946 by using a CABPNI for each of those years.[2] Under the contention of petitioner which is now considered, it seeks to achieve exactly the same result as it sought under its other contentions which have been rejected.

Petitioner's contention is for all practical purposes the same as was made in *Lockhart Creamery, supra* at 1142; *Barry-Wehmiller Machinery Co., supra* at 713–715; *St. Louis Amusement Co., supra* at 526; and *Utility Appliance Corporation, supra*, where such contention was rejected by this Court. The crucial facts are that no application filed by petitioner within the period prescribed by section 322 (b) (6) made claim for the use of a CABPNI for 1941, 1942, and 1946, for the purpose of carryover and carryback, or asserted a claim for carryovers from 1941 and 1942, and for carryback from 1946 of unused excess profits credits arising in each of those years based upon a CABPNI for each of those years. Section 722 (d) provides that the benefits of section 722 shall not be allowed unless the taxpayer, within the period of time prescribed by section 322, makes application therefor in accordance with regulations prescribed by the Commissioner. The provisions of section 722 (d) control for all purposes. "To uphold petitioner's argument would be to ignore sections of the Code and regulations under which taxpayers are required to file proper and sufficient claims for refund, for each taxable year for which a refund is sought." *Barry-Wehmiller Machinery Co., supra* at 714.

The rule requiring the timely filing of a specific claim for the benefit of an unused excess profits credit computed under section 722 for a year from which an unused excess profits credit is to be carried back or carried over, must obviously be no less applicable to a right to use an excess profits credit computed under section 722 for an intervening year upon which the computation of such unused excess profits credit is based, or else the statute of limitations applying to the filing of such claims is meaningless.

It is held that for the purpose of computing the correct excess profits tax liability for 1944, petitioner is not entitled to have all of the computations under section 710, necessary to determine the unused excess profits credit carryback from 1945 to 1944, made using excess profits credits determined under section 722 for all the years material (i. e., 1941, 1942, and 1946) in such computations.

---

[2] The issue here is not the same as in *A. Teichert & Son, Inc.*, 18 T. C. 785. In this case, respondent's position is in accord with the *Teichert* case in principle.

Although petitioner does not cite the *Teichert* case, we deem it well, for clarity, to note here that we think the *Teichert* case is not in point, as we observed in the *Barry-Wehmiller Machinery* case.

Because of certain adjustments to which the parties have agreed, Rule 50 computation is necessary.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*