**UTILITY APPLIANCE CORPORATION,**
a corporation, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15369.

United States Court of Appeals
Ninth Circuit.

May 5, 1958.

George T. Altman, Beverly Hills, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Harry Marselli, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before LEMMON and CHAMBERS, Circuit Judges, and JERTBERG, District Judge.

JERTBERG, District Judge.

This is a petition for a review of the decision of the Tax Court, and involves a determination of the Federal excess profits tax for the calendar year 1944.

█ The Commissioner has expressed some doubt as to the jurisdiction of this Court to review the decision of the Tax Court because of the prohibition against appellate review contained in Section 732(c) of the 1939 Internal Revenue Code, 26 U.S.C.A. Excess Profits Taxes, § 732(c). This section provides:

"If in the determination of the tax liability under this subchapter the determination of any question is necessary solely by reason of section 711(b) (1) (H), (I), (J), or (K), section 721, or section 722, the determination of such question shall not be reviewed or redetermined by any court or agency except the Tax Court."

It is true that the issue here arises under Section 722(d) but that section expressly makes such issue dependent upon Section 322, 26 U.S.C.A. § 322. Furthermore, consideration must be given to the regulations promulgated by the Commissioner pursuant to the provisions of Section 722(d). As stated in May Seed and Nursery Company v. Commissioner of Internal Revenue, 8 Cir., 1957, 242 F.2d 151, at page 155, the issue in this type of case is not one determined "solely by reason of § 722 of the Code" because the underlying questions are as to "whether Section 710 is controlling of the situation" and "whether the Regulations * * * are * * * valid." For the foregoing reasons we are not precluded from assuming jurisdiction in this case because of the provisions of Section 732(c).

The Commissioner of Internal Revenue refused to allow the petitioner to have the benefit of Section 710 of the Internal Revenue Code of 1939, for its fiscal year 1944, of an unused excess profits tax credit carry-back from its fiscal year 1945, based on a constructive average base period net income computed under Section 722 of the Code.

The ground of the Commissioner's refusal was that no claim for the benefit of such credit carry-back had been made in the application or any amendment thereto filed by petitioner for relief under Section 722, to have a constructive average base period net income established in relation to its 1944 tax liability. The Tax Court upheld the Commissioner's refusal and denied petitioner the relief sought.

In order to obtain relief under Section 722, it was necessary for the taxpayer to file an "Application for relief". This was expressly required by Section 722(d). Pursuant to the provisions of that section, the "Application for relief" was required to be filed "within the period of time prescribed by section 322(b) (1)." By virtue of Section 322(b) (1) the application for relief must be filed within three years from the time the return was filed by the taxpayer, or within two years from the time the tax was paid. A special period of limitation was prescribed by Section 322(b) (6) with respect to net operating loss carry-back and unused excess profits carry-back. Under that section applications for relief could be filed in that period which ends with the expiration of the 15th day of the 39th month following the end of the taxable year of the net operating loss or unused excess profits credit which results in such carry-back.

Section 722(d) provides:

"Application for relief under this section. The taxpayer shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section, except as provided in section 710(a) (5). *The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accord-*

*ance with regulations prescribed by the Commissioner with the approval of the Secretary.* If a constructive average base period net income has been determined under the provisions of this section for any taxable year, the Commissioner may, by regulations approved by the Secretary, prescribe the extent to which the limitations prescribed by this subsection may be waived for the purpose of determining the tax under this subchapter for a subsequent taxable year." (Italics added.)

An examination of Treasury Regulation 112, promulgated under the Internal Revenue Code of 1939 relating to the excess profits tax for taxable years beginning after December 31, 1941, discloses: (a) that in order to obtain the benefit of Section 722, a taxpayer must file an application on Form 991 within the period prescribed by Section 322 for the filing of claims for refund; (b) the application must set forth in detail and under oath, each ground under Section 722 upon which the claim for relief is based, and facts sufficient to apprise the Commissioner of the exact basis thereof; (c) that it is incumbent upon the taxpayer to prepare a true and complete claim and to substantiate it with clear and convincing evidence; (d) that a failure to do so will result in the disallowance of the claim; (e) that no new grounds will be considered if presented by the taxpayer after the period prescribed by Section 322.

With particular reference to the allowance of unused excess profits credit carry-back resulting from relief granted under Section 722, the regulations require that a taxpayer must, within the time prescribed by Section 322: (1) File an application on Form 991 for the taxable year for which the unused excess profits credit carry-back is to be applied; (2) the application must contain a complete statement of the facts upon which it is based, and shall claim the benefit of the unused excess profits credit carry-back; (3) if an application for relief for the particular year has already been filed, the taxpayer, in order to obtain the benefit of an unused excess profits credit carry-back based upon a constructive average base period net income, shall, within the time prescribed by Section 322, file an amendment to that application for the taxable year for which the excess profits credit carry-back is to be applied, specifically requesting such carry-back.

As applied to this case, the period under Section 322(b) (1) expired May 15, 1948, and the period under Section 322 (b) (6) expired March 15, 1949.

Petitioner filed its excess profits tax return for the year 1944 on May 15, 1945 pursuant to extensions granted by the Commissioner to such date. The final installment of tax shown on the return was paid December 17, 1945.

On May 15, 1945, petitioner filed an application on Form 991 for excess profits tax relief for the year 1944. This application asked for a reduction in excess profits tax under Section 722 in the amount of $131,071.33. The application claimed a constructive average base period net income of $161,058.71 computed under Section 722(b) (4). Details in support of the constructive average base period net income as claimed were incorporated in the application by reference from statements attached to Form 991 filed by the petitioner for the year 1942. Nothing in the form required a schedule showing how the reduced tax claimed in the amount of $131,071.33 was computed, and no such schedule was attached. The amount of excess profits tax paid by petitioner at or prior to the filing of the claim for relief for 1944 was $43,031.70, and that amount was shown on Form 991 as the amount of refund or credit for which the application was a claim.

Thereafter, on February 28, 1949, petitioner filed a claim on Form 843 to supplement the Form 991, and claimed a total refund of $79,446.59. The claim filed on Form 843 comprehended a constructive average base period net income for 1944 of $161,058.71.

An Internal Revenue Agent's report was issued under date of June 10, 1947. In that report a carry-back of unused excess profits credit from 1945 to 1944, computed without regard to Section 722, was allowed. Subsequently, in 1948 and 1949, additional excess profits taxes were assessed and paid for 1944. In the computation of those additional taxes, that carry-back from 1945 to 1944 of unused excess profits credit was still allowed.

On December 3, 1948, the Internal Revenue Agent in Charge at Los Angeles wrote to petitioner in part as follows:

"Reference is made to your claim for excess profits tax relief under section 722 of the Internal Revenue Code, filed for the years ended December 31, 1940, 1941, 1942, 1943 and 1944. In connection with these claims, it may be noted that the general average base period net income is $29,836.74, whereas under the growth formula, provided in section 713(f) of the Code, you are entitled to use $45,168.23, excess profits net income for the year 1939 which is the highest income in base period years. Also, that excess profits tax paid for the year 1943 was refunded due to a net operating loss and unused excess profits credit carry-back from 1945, and that in 1944 the 80% tax limitation is applicable.

"The claims for relief have been carefully reviewed on the basis of information submitted in connection with the claims, and there appears to be no possibility of a constructive average base period net income which would overcome the growth formula and the 80% limitation, in 1944, and result in the allowance of any relief."

The carry-back of the 1945 unused excess profits credit, as computed without regard to Section 722, was allowed by the Commissioner, both with respect to 1943 and 1944, with the result that the entire excess profits tax paid for 1943 was refunded, and a refund on excess profits tax paid for 1944 was granted.

A letter dated May 7, 1951 from petitioner to the Excess Profits Tax Council reads as follows:

"It appears from the record that the application filed in this proceeding covers only the years 1940–1944, inclusive. Since there was no tax for 1945 no claim was filed for that year.

"We would like to ask now that a constructive average base period net income be determined for 1945 for such application in respect to taxes for years prior to 1945 as the taxpayer may be entitled to upon the record.

"I believe that such a determination should be made as a matter of course because of the carry-back to 1943 and 1944. See revenue agent's reports respecting standard issues. The carry-back has also been a matter of discussion in conferences with the office of the Internal Revenue Agent in Charge and with the Technical Staff. See letter dated December 3, 1948 from the Internal Revenue Agent in Charge to the taxpayer.

"This request is made, nevertheless, for the purpose of making it an express part of the record."

On May 8, 1951 the Excess Profits Tax Council acknowledged receipt of this letter and replied as follows:

"Receipt is acknowledged of your letter of May 7, 1951, concerning subject applications for section 722 relief. It is noted that this letter requests a determination of constructive average base period net income for 1945."

On the date of the petitioner's letter, May 7, 1951, the applications for relief involved here were pending on the merits before the Excess Profits Tax Council. Several conversations and considerable correspondence with the office of the Commissioner relating to the merits, occurred after such date and before the

Commissioner's final determination. The final determination of the Commissioner was made on September 19, 1952. That determination was formally issued as a statutory notice on October 8, 1952.

The Commissioner, in that statutory notice, granted relief under Section 722 for all years in which excess profits tax had been paid and not previously refunded, that is, for the years 1940, 1941, 1942 and 1944. In determining the amount of reduced taxes for 1944, the Commissioner allowed a carry-back of unused excess profits credit from 1945 to 1944, but he refused to allow the taxpayer the benefit of an unused excess profits credit carry-back based upon a constructive average base period net income under Section 722 for 1943 and 1945. In a statement accompanying the formal notice, the Commissioner advised the taxpayer that a constructive average base period net income in the amount of $65,000 had been determined for each of the taxable years ending December 31, 1943 and December 31, 1945 for the purpose only of computing unused excess profits credit carry-over and carry-back to the extent applicable. He stated, however, that no timely claim for refund had been filed for the purpose of using the constructive average base period net income in the computation of the unused excess profits credit carry-over or carry-back for either of such years.

On December 12, 1952, petitioner filed its petition in the Tax Court. In that petition two errors were assigned, one as to the Commissioner's refusal to use a constructive average base period net income for 1943 and the other, as to his refusal to use a constructive average base period net income for 1945, both in connection with the computation of the unused excess profits credit carry-back from 1945 to 1944.

On January 20, 1954 petitioner filed on Form 843 an "Amendment to Claim", relating to its claim for refund of excess profits tax for the year 1944, "solely for the purpose of making formal the claim previously presented requesting use in computing the unused excess profits credit adjustment for 1944 of a constructive average base period net income determined under Section 722 for 1943 and 1944 * * *."

In the Tax Court the Commissioner agreed to the employment of a constructive average base period net income of $65,000 for the year 1943 in arriving at the excess profits credit carry-back from 1945 to the year 1943.

The result was that the only year before the Tax Court was 1944, and that the only year before this Court is 1944. It was stipulated before the Tax Court that if the Court should hold that the constructive average base period net income for the year 1945 may be employed in the computation of unused excess profits carry-back from 1945 to 1944, the amount of such income was $65,000.

The sole question to be decided is: Did petitioner file a timely claim or amendment thereto for the unused excess profits tax credit arising from the use of a constructive average base period net income for carry-back purposes, so that a constructive average base period net income for the year 1945 may be used for computing the unused excess profits tax credit carry-back from the year 1945 to the year 1944?

Treasury Regulation 112, specifically in section (a) in its relevant provisions provides:

"In order to obtain the benefits of an unused excess profits credit for any taxable year for which an application for relief on Form 991 (revised January 1943) was not filed, using the excess profits credit based on a constructive average base period net income as an unused excess profits credit carry-over or carry-back, the taxpayer, except as otherwise provided in (d) of this section, *must file an application on Form 991 (revised January 1943), for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied within the period of time prescribed by section 322 for the filing of a*

*claim for credit or refund for such latter taxable year. In addition to all other information required, such application shall contain a* complete statement of the facts upon which it is based and which existed with respect to the taxable year for which the unused excess profits credit so computed is claimed to have arisen, and shall claim the benefit of the unused excess profits credit carry-over or carry-back." Treasury Regulation 112, Sec. 35.722-5. (Italics added.)

The petitioner concedes in his opening brief (pp. 10-11) that "there was, it is true, during the period allowed for filing claims, no specific written request for the use of a constructive average base period net income for 1945 in computing the carry-back involved," and that "it is true that within the time allowed for filing claims there was no specific written request for the employment of a CABPNI in computing the unused excess profits credit carry-back". Pp. 15-16 of opening brief.

█ It is clear from the record that Form 991 filed May 15, 1945 for 1944 made no claim for a carry-back of unused excess profits credit from 1945 computed either with or without regard to Section 722. The same statement applies with equal force to Form 843, filed February 28, 1949. The applications for relief, Form 991 and Form 843, filed by the petitioner fail to comply with the regulations. Lockhart Creamery v. Commissioner of Internal Revenue, 17 T.C. 1123; May Seed and Nursery Company v. Commissioner of Internal Revenue, supra, affirming 24 T.C. 1131.

█ However, the petitioner contends that the application for relief filed May 15, 1945 complied with Section 722(d) and the regulations, although it contained no express request for the use of a constructive average base period net income for 1945 in computing the unused excess profits credit carry-back for that year available for 1944, since it was on the required form (991); that the form

required no express statement relating to an unused excess profits credit carry-back, nothing in the form required petitioner to disclose how the amount of reduced taxes was computed, the information necessary for the computation of a constructive average base period net income for 1945 was incorporated in the application by reference to statements for prior years, and the implicit application for a tentative carry-back recognized by its allowance.

█ Substantially the same argument was advanced in the Tax Court and rejected on the reasoning set forth in St. Louis Amusement Company v. Commissioner, 22 T.C. 522. We are in agreement with the reasoning of that decision. We hold that the regulations are reasonable and valid. See May Seed and Nursery Company v. Commissioner of Internal Revenue, supra.

Petitioner further contends that even if the original claim filed was defective because it did not expressly request that the unused excess profits credit carry-back from 1945 be computed by employment of a constructive average base period net income for 1945, such defect was cured by petitioner's letter of May 7, 1951 to the Excess Profits Tax Council.

█ The petitioner's letter of May 7, 1951 plainly shows that such letter was the first occasion on which petitioner requested that a constructive average base period net income be determined for the year 1945 for the allowance of a carry-back of an unused excess profits tax credit from 1945 to prior years. This request was made almost two years after the Statute of Limitations had run. It was too late as an original application, and it could not be considered as such by the Commissioner, since the Commissioner is powerless to waive the substantive requirements of the statute. U. S. v. Garbutt Oil Company, 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405. The letter of May 7, 1951 cannot be considered as an amendment of the application timely filed by the taxpayer for relief and refund on specific grounds under Section

722. The timely applications asserted no claim for any carry-back of an unused credit from 1945 to 1944. The letter of May 7, 1951 was a new claim, untimely filed.

 Implicit in the argument of petitioner is the contention that the Commissioner waived the requirements of the regulations because the Commissioner granted a carry-back of an unused excess profits tax credit from 1945 to prior years under the normal provisions of the law, allowed a constructive average base period net income under Section 722 for the years 1945 and 1943, and agreed, before the Tax Court, to the employment of a constructive average base period net income for the year 1943 in arriving at the excess profits credit carry-back from 1945 to the year 1943. The carry-back of the unused excess profits tax credit from 1945 to prior years under normal provisions of the law is required under Section 710(c), whether claimed or not. May Seed and Nursery Co. v. Commissioner, supra. The concession before the Tax Court was only for the purpose of determining the amount of unused excess profits tax credit arising under the normal provisions of the law for the year 1945 which would be used up in the year 1943, and so as to thus arrive at the amount of unused remainder of the "normal excess profits tax credit" which would be available to be applied to the year 1944. Such actions constituted no waiver of the regulations. The allowance by the Commissioner of a constructive average base period net income for the years 1945 and 1943 were made specifically for "the purpose only of computing unused excess profits credit carry-over or carry-back to the extent applicable". At the same time the Commissioner advised the taxpayer that no timely claim had been filed for a carry-back based on a constructive average base period net income and that the carry-back was denied. The action of the Commissioner shows that he was standing on the requirements of the regulations and was not waiving them.

The decision of the Tax Court is affirmed.

The death of Circuit Judge LEMMON occurred on April 26, 1958. Although he heard the oral arguments, he did not participate in the foregoing decision.