THE GILLETTE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84732. Filed December 20, 1961.

*Wilson C. Piper, Esq.*, for the petitioner.
*James E. Markham, Esq.*, for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax in the amount of $76,976.65 and an overassessment in its excess profits tax in the amount of $202,773.72 for the year 1943.

The sole question for decision is whether respondent erred in computing the unused excess profits credit carryover from 1941 to 1943 by basing the excess profits credit for the intervening year 1942 on average base period net income rather than on a constructive average base period net income for which petitioner contends.

All the facts have been stipulated and are found accordingly.

Petitioner is a corporation organized and existing under the laws of the State of Delaware with its principal office at Boston, Massachusetts.

Petitioner filed its income and excess profits tax returns for the years here involved on a calendar year basis with the then collector of internal revenue for the district of Massachusetts.

Petitioner had no excess profits tax liability for the years 1940, 1941, and 1942.

In its excess profits tax return originally filed for 1943, petitioner claimed an unused excess profits credit adjustment of $4,370,254.93, computed as follows:

| | 1940 | 1941 | 1942 |
|---|---|---|---|
| Unused excess profits credit (computed on ABPNI) | $1,871,453.69 | $4,370,254.93 | |
| Adjusted excess profits net income (after reduction of EPNI for credit based on ABPNI) | | | $360,431.22 |
| Unused excess profits credit from 1940 carried over | 1,871,453.69 | | 1,871,453.69 |
| Unused excess profits credit adjustment | | 4,370,254.93 | |

In its excess profits tax return for 1943, as amended, petitioner claimed no unused excess profits credit adjustment.

Petitioner filed timely applications for relief under section 722 of the Internal Revenue Code (Form 991) for the years 1943, 1944, and 1945. On Form 991 filed for the year 1943 petitioner claimed a constructive average base period net income in the amount of $6,006,047.25. On the same form, in answer to the question, "Has an application for a constructive average base period net income been made for a prior taxable year?" petitioner stated as follows:

Yes, but withdrawn without prejudice. However, benefit of carryovers from 1940 or from 1940 and 1941, together with benefit of any carrybacks which may be involved, based upon construction [sic] average base period net income under Section 722 for any such year or year [sic] is hereby claimed.

On the same form, in reply to the next request for information, "If so, state year or years," petitioner answered, "1941."

The Excess Profits Tax Council Determination approved October 3, 1955, Robert W. Andrews, coordinator, determined a constructive average base period net income of $3,840,000 for each of the years 1943, 1944, and 1945, and for carryover purposes only, a constructive average base period net income of $3,800,000 for the year 1940 and $3,840,000 for each of the years 1941 and 1942. Agreement, Form EPC-1, was signed by petitioner on April 13, 1955, in which petitioner consented and agreed to the determination of the constructive average base period net income, as follows:

| Taxable year ended Dec. 31— | CABPNI |
|---|---|
| 1941 (for carryover purposes only) | $3,840,000 |
| 1943 | 3,840,000 |
| 1944 | 3,840,000 |
| 1945 | 3,840,000 |

In the Excess Profits Tax Council Determination the following is stated:

Since under Commissioner's Mimeograph R.A. 1529, dated July 31, 1946, published as Mim. 6044 (1946–2 C.B. 97), the decision of the Council relates to the determination of constructive average base period net income only, the

Council has determined that if it is proper in determining the unused excess profits credit carry-over from 1941 to 1943 to compute the excess profits credit for 1940 and 1942 upon constructive average base period net incomes, the CABPNI for 1940 under the variable credit rule is $3,800,000 and the CABPNI for 1942 is $3,840,000. This leaves it within the jurisdiction of the Field to determine whether the credits for 1940 and 1942 are to be based on the CABPNI's determined by the Council.

In the statutory notice of determination of the petitioner's excess profits tax liability for the year 1943, respondent computed the unused excess profits credit adjustment for 1943 as follows:

| | | |
|---|---:|---:|
| Excess profits credit for 1940, based on CABPNI_ | $3, 661, 194. 93 | |
| Excess profits net income for 1940_____ | 2, 971, 572. 29 | |
| Unused excess profits credit for 1940_____ | | $689, 622. 64 |
| Excess profits credit for 1941, based on CABPNI_ | 3,699, 187. 52 | |
| Excess profits NI for 1941_____ | 415, 049. 95 | |
| Unused excess profits credit for 1941_____ | | 3, 284, 137. 57 |
| Unused credit carryover from 1940 and 1941_____ | | 3, 973, 760. 21 |
| Excess profits NI for 1942_____ | 6, 251, 718. 82 | |
| Excess profits credit for 1942, based on ABPNI_ | 3, 530, 654. 34 | |
| Balance of excess profits NI for 1942_____ | | 2, 721, 064. 48 |
| Unused excess profits credit adjustment for 1943_____ | | 1, 252, 695. 73 |

In determining the overassessment here involved for the year 1943, respondent reduced the unused excess profits credit carryover from 1941 by applying a portion thereof in computing petitioner's adjusted excess profits net income for 1942. This, of course, was proper; it is in the computation of adjusted excess profits net income for 1942 that the parties disagree. Petitioner maintains that the adjusted excess profits net income for 1942 must be computed by allowing an excess profits credit for 1942 of $3,840,000 based upon CABPNI for 1942. Respondent would compute the adjusted excess profits net income for 1942 by allowing an excess profits credit for 1942 based on average base period net income; the resulting larger net income would absorb more of the unused credit for 1941 than would petitioner's computation, thereby reducing the amount of the unused credit for 1941 that may be carried over to 1943 and reducing the amount of overassessment in excess profits tax claimed by petitioner.

Section 710(b), I.R.C. 1939,[1] provided that the adjusted excess profits net income means the excess profits net income minus (1) the specific exemption, (2) the excess profits credit allowed under section 712, and (3) the amount of the unused excess profits credit adjust-

---

[1] All section references are to the World War II excess profits tax law contained in sub-chapter E of chapter 2 of the Internal Revenue Code of 1939, repealed after 1945.

ment for the taxable year, computed in accordance with subsection (c). Section 710(c) provided that the unused excess profits credit adjustment for any taxable year should be the aggregate of the unused excess profits credit carryover and carrybacks to the taxable year, that the term "unused excess profits credit" meant the excess of the excess profits credit over the excess profits net income for the taxable year, and that if the taxpayer had an unused excess profits credit for a taxable year, it would be an unused excess profits credit carryback for the 2 preceding years and carryover for each of the 2 succeeding taxable years, "except that the carry-over in the case of the second succeeding taxable year shall be the excess, if any, of the amount of such unused excess profits credit over the adjusted excess profits net income for the intervening taxable year computed for such intervening taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit or to any unused excess profits credit carry-back, and (ii) without the deduction of the specific exemption."

Section 722, which is a relief statute, provides, in case the excess profits credit is based on normal earnings, for the computation of an excess profits credit based on a constructive average base period net income, rather than average base period net income, provided the taxpayer establishes the right to such relief.

Section 722(d), the provisions of which are set forth in the margin,[2] provides that the benefits of section 722 shall not be allowed "unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary."

Section 35.722–5, Regs. 112, as amended by T.D. 5393, 1944 C.B. 415, provides that to obtain the benefits of section 722 for a taxable year, a taxpayer, within the prescribed time, must file under oath an application on Form 991 for the benefits of section 722. The application must set forth in detail each ground upon which the claim for relief is based and facts sufficient to apprise the Commissioner of the exact basis thereof. A separate application shall be filed for each

[2] SEC. 722(d). APPLICATION FOR RELIEF UNDER THIS SECTION.—The taxpayer shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section, except as provided in section 710(a)(5). The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. If a constructive average base period net income has been determined under the provisions of this section for any taxable year, the Commissioner may, by regulations approved by the Secretary, prescribe the extent to which the limitations prescribed by this subsection may be waived for the purpose of determining the tax under this subchapter for a subsequent taxable year.

taxable year for which relief is claimed under section 722, except as otherwise provided in (*d*). Paragraph (*a*) provides further:

In order to obtain the benefits of an unused excess profits credit for any taxable year for which an application for relief on Form 991 (revised January, 1943) was not filed, using the excess profits credit based on a constructive average base period net income as an unused excess profits credit carry-over or carry-back, the taxpayer, except as otherwise provided in (*d*) of this section, must file an application on Form 991 (revised January, 1943) for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied within the period of time prescribed by section 322 for the filing of a claim for credit or refund for such latter taxable year. In addition to all other information required, such application shall contain a complete statement of the facts upon which it is based and which existed with respect to the taxable year for which the unused excess profits credit so computed is claimed to have arisen, and shall claim the benefit of the unused excess profits credit carry-over or carry-back. If an application on Form 991 (revised January, 1943) for the benefits of section 722 has been filed with respect to any taxable year, or if the filing of such application is unnecessary under (*d*) of this section, and if the excess profits credit based upon a constructive average base period net income determined for such taxable year produces an unused excess profits credit for such year, to obtain the benefits of such unused excess profits credit as an unused excess profits credit carry-over or carry-back the taxpayer should file an application upon Form 991 (revised January, 1943), or an amendment to such application if already filed, for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied. [1944 C.B. 421–422.]

It is respondent's position that the excess profits credit for 1942 cannot be based upon a CABPNI because petitioner filed no claim for relief under section 722 for 1942; he argues that a specific claim for section 722 relief for an intervening year is required before a CABPNI can be utilized as the basis for an excess profits credit for such intervening year.

Petitioner maintains that no specific claim for section 722 relief for an intervening year need be filed as a prerequisite for the use of constructive income in determining the excess profits credit for such intervening year, when only the amount of adjusted excess profits net income used to absorb a portion of an unused excess profits credit carryover from a prior year is being computed. Petitioner further argues that, in any case, its timely application for section 722 relief— properly construed—specifically claimed the use of a CABPNI for the intervening year 1942.

It has been a basic principle for section 722 relief that an application for its benefits be filed as a prerequisite to the allowance of such relief. See H. Rept. No. 146, 77th Cong., 1st Sess., p. 13 (1941), 1941–1 C.B. 550. All claims must first be considered by the Commissioner, *Pioneer Parachute Co.*, 4 T.C. 27 (1944), and applications for relief must be filed in accordance with regulations prescribed by the Commissioner. Sec. 722(d); *Blum Folding Paper Box Co.*, 4 T.C.

795 (1945); *Lockhart Creamery*, 17 T.C. 1123 (1952); *May Seed & Nursery Co.*, 24 T.C. 1131 (1955), affd. 242 F. 2d 151 (C.A. 8, 1957), certiorari denied 355 U.S. 839 (1957). The regulations require that the application set forth in detail the grounds for relief and facts sufficient to apprise the Commissioner of the exact basis therefor; that if an unused excess profits credit from a taxable year for which no application for relief on Form 991 has been filed, computed on the basis of constructive average base period net income, is to be used as a carryover, the taxpayer must file an application for the taxable year to which the unused credit carryover is to be applied; and that such application must contain a complete statement of the facts upon which it is based and which existed with respect to the year in which the credit arose, and shall claim the benefit of the unused excess profits credit carryover. These requirements of the regulations have been held to be reasonable and valid in *Lockhart Creamery*, *supra*; *St. Louis Amusement Co.*, 22 T.C. 522 (1954); *Utility Appliance Corporation*, 26 T.C. 366 (1956), affd. 256 F. 2d 39 (C.A. 9, 1958); *Feature Publications, Inc.*, 29 T.C. 313 (1957), and other cases on which respondent relies.

It will be noted, however, that the regulations do not specifically require the filing of an application for section 722 relief for an intervening year where there is no unused credit for that particular year. In fact, the regulations quoted above require only that an application be filed for the year to which the unused excess profits credit carryover, based on CABPNI, is to be applied. The application must contain a complete statement of all facts which existed with respect to the taxable year for which the unused excess profits credit so computed is claimed to have arisen, but nothing is said about an intervening year. The only statement in the regulations which might require the filing of an application for relief for the intervening year under the circumstances here present is the general requirement that the claim for relief (for 1943 here) set forth in detail each ground for relief and facts sufficient to apprise respondent of the exact basis therefor.

Were we dealing here with whether a constructive credit may constitute an allowable credit from a year for which there had been no specific claim for section 722 relief filed, the cases upon which respondent relies would furnish a quick answer, because we have held in those cases that a specific claim for benefit of an unused credit carryover based upon a CABPNI for the year in which the unused credit arose must be filed to permit the use thereof. But that is not the situation here. The unused credit with which we are concerned is a carryover not from 1942 but from 1941, for which year respondent agrees a claim for section 722 relief was filed, and neither the regulations nor the cited

cases provide a ready answer for the issue posed herein. Cf. *H. J. Heinz Co.*, 32 T.C. 22 (1959).

There seems to be no question here that petitioner was entitled to have its excess profits credit for 1942 computed on the basis of CABPNI had this been specifically claimed in its Form 991 filed for 1943; and the Excess Profits Tax Council appears to have had no more trouble computing petitioner's CABPNI for 1942 than it had in computing its CABPNI for 1941 and 1943. By recognizing that petitioner was claiming a credit carryover from 1941 to 1943 based on a CABPNI for both of those years, respondent was on notice by virtue of the statute that the amount of the unused credit for 1941 available as a carryover to 1943 must first be applied against petitioner's adjusted excess profits net income for 1942 and all facts necessary to compute petitioner's adjusted excess profits net income for 1942 based upon CABPNI appear to have been available to respondent. In fact, the Council actually determined petitioner's CABPNI for 1942 before this claim was denied. While petitioner's application for relief did not specifically mention the year 1942, this is understandable because no unused credit from 1942 was available, and the application did claim the benefit of carryovers from 1940 and 1941, "based upon construction [*sic*] average base period net income under Section 722 for any such year or year[*sic*]." Cf. *Packer Publishing Co.*, 17 T.C. 882 (1951), remanded on other grounds 211 F. 2d 612 (C.A. 8, 1954). To deny petitioner the relief it is seeking here would be to rely on a technical omission of something which neither the statute nor the regulations specifically require. This we refused to do in *H. J. Heinz Co.*, *supra*, and *Wilmington Gasoline Corporation*, 27 T.C. 500 (1956), and we see no reason for doing so here. Cf. *Angelus Milling Co.* v. *Commissioner*, 325 U.S. 293 (1945).

Respondent relies principally on our decision in *Feature Publications, Inc.*, *supra*, as support for his position. It is true that certain language in that opinion, quoted in the footnote below,[3] appears to support respondent's position. However, the facts in that case were quite different from the facts here and the Court was not referring to an intervening year in the sense that term is used here. Also the Court there was concerned primarily with the statute of limitations, which issue we do not have here. We do not believe that case requires a conclusion in respondent's favor here.

---

[3] "The rule requiring the timely filing of a specific claim for the benefit of an unused excess profits credit computed under section 722 for a year *from* which an unused excess profits credit is to be carried back or carried over. must obviously be no less applicable to a right to use an excess profits credit computed under section 722 *for an intervening year upon which the computation of such unused excess profits credit is based,* or else the statute of limitations applying to the filing of such claims is meaningless." (Emphasis supplied.)

In *Feature Publications, Inc., supra*, the Court, in the opening paragraph of its opinion, stated the question to be "whether petitioner made timely claims for unused excess profits credits, originating in 1941, 1942, and 1946, arising from the use of a constructive average base period net income for carryover and carryback purposes so that a constructive average base period net income for each of the years 1941, 1942, and 1946 may be employed for the purpose of computing the unused excess profits credit carryovers from 1941 and 1942, and the unused excess profits carryback from 1946 to 1944." Petitioner had filed timely applications for section 722 relief for the years 1943, 1944, and 1945.[4] The original timely applications did not include any claim for benefits of unused excess profits credits from 1941, 1942, or 1946, computed with or without the benefit of a CABPNI. When it became apparent that the unused credit from 1945 would all be absorbed by carryback to 1943 (and thus none would be available for 1944) unless unused credits from 1941 and 1942, based on CABPNI, were first applied to 1943, petitioner attempted to amend its applications for 1943 and 1944 to claim such unused credits from 1941 and 1942 after the statute of limitations had run. We held this could not be done because the purported amendments were not true amendments of the original applications but were actually new applications which were filed out of time.

In *Feature Publications* petitioner sought to use as carryovers unused credits from years which had not been claimed in a timely application. The intervening year would have been either a year from which a credit sought to be used arose, or the year 1943 to which the unused credit was sought to be applied and for which a timely application had been filed. The regulations require a specific claim or specific information with respect thereto in either such case. In the instant case no unused credit from the year 1942 is claimed and it is not the year to which the unused credit from 1941 is sought to be applied. Neither the regulations nor the cases state that a specific claim for section 722 relief need be filed in such circumstances. Absent such specific requirement, we find that petitioner here has complied with all the requirements of the regulations to obtain the relief it here seeks, and we hold for petitioner on this issue.

Because of other proposed adjustments which are uncontested by petitioner, a Rule 50 computation is necessary.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*

---

[4] By timely amendment.